ODOM, J.
 

 The purpose of this suit is to restrain the Louisiana highway commission from changing the route of a certain highway, designated as No. 10 in Act No. 95 of the Extra Ses
 
 *1036
 
 sion of 1921, as finally amended by Act No. 294 of 1928. Both the act of 1921 and that of 1928 provide that highway No. 10 shall begin at the Arkansas state line and run through Plain Dealing, Benton, Bossier City, Curtis, Taylortown, Crichton, Coushata, Gampti to Natchitoches.
 

 In December, 1929, the highway commission let a contract for the building of what is known as project No. 1702, which is a portion of highway No. 10, as designated in the acts above referred to. The said project 1702, however, is so located that it does not run through or touch Crichton, but leaves it off the said route a distance of approximately three miles-. These plaintiffs allege that the highway commission, in attempting to carry out the provisions of the said acts, “improperly and erroneously and in violation of said acts laid out a portion of Route No. 10 as hereinafter set forth; * * * that said parties have deviated from Route No. 10; * * * that said project No. 1702 as located does not touch the village of Crichton, Louisiana, as Route No. 10 is required to do by Act No. 95 of the Extra Session of 1921, as amended' by Act No. 294 of 1928.”
 

 The highway commission excepted to the petition on the ground that it set out no cause of action, which exception was sustained by the trial court and the case was appealed to this court, and on June 2, 1930, this court reversed the judgment, holding that plaintiffs' had disclosed a cause of action and remanded the case to be tried on its merits. Crichton et al. v. Louisiana Highway Commission et al., 170 La. 863, 129 So. 373, 374.
 

 It is unnecessary to here state all the legal issues involved, for the reason that they were definitely stated and disposed of in our former opinion. As the case is now before us on-its merits, it is well that we here quote the following pertinent statements found in the opinion.
 

 “The routes designated by the Legislature cannot be changed or altered by the commission so as to leave the towns off of the route, unless the engineering difficulties or the financial cost of construction of the route named render such construction inadvisable, or it becomes necessary to change the route to meet federal requirements as a condition precedent to receiving federal aid.
 

 “The petition having alleged that the commission was proceeding in violation of the act of the Legislature in locating route No. 10, or a portion thereof, so as to leave the town of Crichton off of said route, it is incumbent on the highway commission to show that its action was justified under the proviso of the statute referred to.”
 

 The highway commission, in answer, admitted that it had changed the route of highway No. 10 so as to leave Crichton off the road, but denied that it had done so “improperly and erroneously and in violation of law,” and alleged as its reasons for making the change that a field survey showed that the location of the road through Crichton was “inadvisable on account of the engineering-difficulties and financial cost; * *
 
 *
 
 that the engineering difficulties and financial costs rendered the construction of the road through the village of Crichton highly inadvisable.”
 

 There was judgment in the lower court in favor of the defendant, and plaintiff appealed.
 

 Counsel for appellants correctly state, in their brief at page 8, that “the only question before this court is. whether or not the .Highway Commission has shown that there were engineering difficulties and financial
 
 costs
 
 of construction of the route through Crichton which would render the construction of the road inadvisable.”
 

 
 *1038
 
 The testimony of both expert and lay witnesses shows beyond question that the highway commission was warranted in changing the route of this road as it did.
 

 The building of a paved highway along the old route known as No. 10, which passes through the village or settlement called “Crichton,” would have been inadvisable, both from an engineering standpoint,- and from the standpoint of expense.
 

 The state has undertaken to build a complete system of paved roads at enormous expense. These highways are not intended to be mere makeshifts, built for a day, but are intended to be permanent, lasting structures. To the end that these roads may endure, they must be built upon solid foundations, and to the end that they may at all times subserve the purposes intended, they must be built above overflow. When the highway commission engineers made a survey of the territory through which the old road ran in the vicinity of Crichton, they found that it ran, in places, near to the channel of Red river, through a flat, alluvial country, which overflows during high water. They found that Red river has caving banks; that the soil is of such nature that it sloughs off and falls into the river; and that, in places not far from Crichton, the river had in the past changed its channel.
 

 Mr. Cheet, chief locating engineer for the highway commission, said he thought the building of the road along the old route was inadvisable for the reasons that “the banks of Red River are caving very fast. The section is subject to overflow frequently, every high water. The natural cost would be too great, too much incession, and considering the hazard too great to combat in a section of that kind * * * the greatest hazard I would consider would be the change of the bed of Red River, caving banks. * * * It (meaning the road) might go out within the next few years. The river may change in there and cut the road; that is possible.”
 

 He further said that in his opinion the river might leave its present channel at a point eight miles north of Crichton and cut through toward the hills, in which event the road would be cut in two. Asked what changes the river had made to his knowledge, he said he knew of two, -one north of Crichton and one south at Grand Ecore, four miles from Natchitoches, the latter being so great as to make it necessary to move a railroad.
 

 Mr. Mee, division engineer for the Louisi'ana & Arkansas Railroad, which parallels the old highway, said that he had been connected with that road either as engineer or roadmaster since 1908, and that he had found it necessary to shift the railroad track in the vicinity of Crichton on account of the encroachment of the river. He was asked if there had been any sloughing of the banks of the river in the Crichton section, and he said, “Well, there is a bad sloughing condition about a mile above Crichton and quite a bad sloughing about a mile south of Crichton.” He said he had recommended that the railroad tracks be shifted to the hills “to get away from the encroachment of Red River. * * * I have stated to my company that there was every likelihood of Red River going through below East Point, between East Point and Crichton. I have considered that. In other words, something is liable to happen in there at any time we have big water. There, if there is a break there, it is liable to cut through back to Coushata Bayou, change the channel through there.” His company, he said, had spent $486,000 in protecting its track from the encroachments of the river at three points north of Crichton, and the only reason the
 
 *1040
 
 company did not now remove its road to the hills was that it did not have the money.
 

 Besides these experts, there were called some seven or eight laymen who live in that vicinity, among them Mr. Woodward, president of the police jury of Red river parish. The engineers and these laymen all said the territory was subject to overflow. Some of them had gone over the line of the Qld road in boats, and there is testimony that the water-has been as much as eight feet deep as shown by water marks yet visible on trees and houses.
 

 The surface of the road could be put above high water, but that would necessitate the building of a high embankment at greatly increased expense. If such were done, there would still remain the problem of protecting the embankment or dump from caving during overflow.
 

 These were the engineering problems which confronted the commission when it came to building this road. It was therefore deemed’ advisable to change the route of the road and build it on the edge of the hills, where there would be no danger from cavings and overflow.
 

 As to the expense, the engineers testified that it w-ould cost from $30,000 to $100,000 more to build the road through Crichton, than along the route finally adopted. Some of the lay witnesses testified that it is cheaper to move dirt in the valleys than in the hills. Conceding that to be true, it does not necessarily follow that the eight or ten miles of road involved in this change could not be constructed at less cost along the route finally selected than along the old road. The engineers are the ones who should know, and, as a matter of fact, do know.
 

 We cannot substitute our own opinions for the opinion of engineers in matters of this kind.
 

 The testimony adduced warrants the holding that the engineering difficulties, and the financial cost of constructing the road along the route of the old road, render such construction inadvisable, and for that reason the highway commission was within the law in making the change.
 

 Counsel for plaintiffs objected to the introduction of any testimony on behalf of the highway commission, on the ground that the allegation in the answer that “the engineering difficulties and financial costs rendered the construction of the road through the village of Crichton highly inadvisable” was but a mere conclusion of the pleader, “and therefore amounts to nothing; and further that these allegations are too vague and indefinite to admit of proof.”
 

 It is counsel’s Contention that the pleader should have set forth in detail and specifically what engineering difficulties the engineers expected to encounter, and that, without such specific allegations, no proof was admissible. They cite the following' cases in support of their contention: State v. Hackley, Hume & Joyce, 124 La. 854, 50 So. 772; Arent v. Liquidating Commissioners of Bank, 133 La. 134. 62 So. 602; Succession of Hernandez, 138 La. 134, 70 So. 63; Hodges et al. v. Lyon et al., 154 La. 635, 98 So. 49; Hart et al. v. Standard Oil Co. of La., 168 La. 183, 121 So. 737.
 

 In all these cases, the court had under consideration allegations contained in a petition, and not allegations contained in an answer.
 

 When a plaintiff makes a demand upon a defendant, he must do more than state conclusions ; he must set out specific charges; state facts sufficient to support his conclusions. Likewise, if the defendant sets up a counter or offsetting claim, makes a reconventional demand, or asks for an affirmative judgment against plaintiff, ho must state in his answer the ultimate facts to support his contention,
 
 *1042
 
 and must set forth his claim against the plaintiff with the same clearness and precision as if alleged in a direct action. Teal v. Lyons et al., 30 La. Ann. 1140; Bayly & Pond v. Stacey & Poland, 30 La. Ann. 1210; Hernsheim & Bro. v. Levy, 32 La. Ann. 340; Frank v. Hollander, 35 La. Ann. 582; Stringfellow v. Nowlin Bros, et al., 157 La. 683, 102 So. 869; Ouachita National Bank v. McIlhenny, 169 La. 258, 125 So. 69.
 

 This rule does not apply, however, in a case like this, where, in answer, the defendant sets out pleas purely in defense of the action brought against him.
 

 Here, plaintiff alleged as a cause of action that the highway commission had “improperly and erroneously'and in violation of said acts” (of the Legislature) changed the location of a state road. The commission answered that its action in making the change was justified under the proviso of the statute. We said in our former opinion, “It is incumbent on the highway commission to show that its action was justified.”
 

 In order to prove that it was justified, the commission was not called upon to allege in detail just what the engineering difficulties were.
 

 The judgment is affirmed, with costs.
 

 O’NIELL, C. J., concurs in the decree.