**85 So.2d 260**

**The TEXAS PIPE LINE COMPANY**

**v.**

**Alfred M. BARBE and Lucius L. Moss.**

No. 41438.

Feb. 14, 1955.

On Rehearing June 30, 1955.

On Second Rehearing Jan. 16, 1956.

Richard S. Lake, D. Douglas Howard, New Orleans, Oliver P. Stockwell, Plauche & Stockwell, Lake Charles, of counsel, for plaintiff-appellant.

Porter & Stewart, by Thomas F. Porter, Lake Charles, for defendants-appellees.

MOISE, Justice.

A devolutive appeal was taken by The Texas Pipe Line Company from a judgment of the district court, which granted to plaintiff a sixty-foot right-of-way during the construction of a pipe line, to revert to a thirty-foot permanent right-of-way; and awarded to Alfred M. Barbe and Lucius L. Moss the sum of $1,140 for the thirty-foot right-of-way traversing 1.114 acres and $11,250 as severance damages on Tract No. 1; and awarded to Alfred M. Barbe the sum of $2,205 for the thirty-foot right-of-way traversing 2.205 acres and $22,500 as severance damages on Tract No. 2.

The issue on this appeal is the alleged excessive awards of the lower court for the right-of-ways and alleged erroneous awards for severance damages. The defendants answer the appeal and plead the inadequacy of the awards. The appellant has paid the amount of the awards into the Registry of the Court, in order not to delay the construction of the pipe line.

It is the jurisprudence of this Court that, where there is a willing seller and a willing buyer and the lands are adjoining, adjacent and similar to the property sought to be expropriated, the sales value of such lands will often act as a criterion of value. However, other factors will be found in the evidence in this record that will show that such is not always a fair test.

There is in the record testimony to the effect—

"That these lands are near a deep water channel to the Gulf; that they are highly suitable for industrial purposes, because of the qualifications of this area as one of the prime industrial areas of the Gulf Coast and its close proximity to ship channel, the railroad facilities, the access of paved concrete highways (and one in particular from Sulphur passing only a few hundred feet from the property.

"The property itself is adequately separated from other industries. The fact that there is some intervening space would make it more suitable than if it was closer to existing industries.

"There is abundant available fuel in this area—there being thirty-three oil and gas fields within an area of thirty miles from Lake Charles, which is only a few miles from this property. Not only is gas and oil available in sufficient quantities for fuel, but it is available for other basic materials for petro-chemical industries that might locate in this area.

"Two deep water channels to the Gulf are available, and nearby industries make available by-products needed for certain industries.

"This area offers very attractive advantages to industries, because of cheap fuel, sufficient labor, good climate, and availability of by-products from near-by industries."

·This is a description of the location of the property, and such a description makes that property available for industrial purposes.

The trial judge, in a well considered opinion, discusses the evidence in detail and fairly disposes of the issues involved. We have, therefore, adopted his reasons as our own.

██ "The first issue to be determined is that of public necessity and purpose. The rule of law is stated in the case of Louisiana Railway and Navigation Company v. Xavier Realty, Limited, 115 La. 328, 39 So. 1. Mr. C. H. Albitz, assistant general manager in operation for plaintiff, and Mr. G. E. Musselman, senior Civil engineer for plaintiff, testified in behalf of plaintiff on the issue of public necessity and public purpose. The evidence discloses that plaintiff has now in existence south of the proposed pipe line, a 22 inch crude oil line running from Houma, Louisiana to Port Arthur, Texas. The proposed 16 inch pipe line will run from Port Arthur, Texas to Baton Rouge and thence by way of the Plantation System to the Southeastern states. It is also necessary that the 16 inch line connect with Cities Service Refining Company at Lake Charles, Louisiana, this being one of the reasons why the servitude used in the 22 inch line could not be used in the erection of the 16 inch line. It was also

testified that plaintiff had obtained a certificate of necessity from the office of Petroleum Administration for defense, a federal agency. The 16 inch line will carry gasoline and other refined products from Texas to Baton Rouge and thence to the Southeastern states. The court is of the opinion that plaintiff has shown public necessity and purpose and have the right to expropriate in the case at bar.

"The court having concluded that the plaintiff has shown public necessity and purpose it will now proceed to the next contention advanced by defendants. They contend that the right of way is excessive. The court concluded in other cases tried recently that a thirty foot servitude would be sufficient. Defendants offered a deed from Mrs. Matilda Geddings Gray et al in favor of plaintiff to show that plaintiff did not need the right of way in question. The vendors in the deed to plaintiff were defendants in a case similar to the one at bar before this section of the court. There were many preliminary hearings had and the parties finally compromised their differences and dismissed their suit. The deed introduced as D–3 was the result of the compromise. However, giving the deed full force as a conventional sale while the right of way or servitude is less than 60 feet wide, plaintiff is not limited to the width of the pipe line for the pur-

poses necessary or incidental for said operation as a reading of the deed will show.

"The Supreme Court in reviewing the subject as to excessive taking said in the cases Crichton v. Louisiana Highway Commission, 172 La. 1033, 136 So. 43 and State v. Cooper, 213 La. 1016, 36 So.2d 22, that they would not disturb the decision of qualified officials, such as engineers, whose duty it is to determine the amount of land needed unless acted arbitrarily and also that the requirement as to land need not be restricted to the needs of the immediate future. However, counsel for plaintiff conceded in oral argument that a 30 foot servitude would suffice. The Court concludes *that a 30 foot servitude is sufficient.* The court will allow plaintiff to use the 60 feet it requested in its suit during the construction of said pipe line but as soon as it is completed the use of said land shall be limited to a servitude 30 feet wide." (Italics ours.)

"The court will consider next the question of compensation and damages due defendants as a result of the taking.

"The law on the subject of compensation and damages is stated in the case of Louisiana Highway Commission v. Israel, 205 La. 669, 17 So. 2d [914] 915, 916, in the following language namely:

" 'The law is well settled, and counsel for the respective litigants agree, that the amount due for private property expropriated for public purposes is its market value when taken, Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1. The market value of property is its fair value between one who wants to purchase and one who wants to sell, under ordinary and usual circumstances. Opelousas, G. & N. E. Railroad Company v. Bradford, 118 La. 506, 43 So. 79; Louisville & N. Railroad Company v. R. E. [E.] De Montluzin Company, Inc., 166 La. 211, 116 So. 854; Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354. It does not mean speculative value. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672. Furthermore, compensation is due to the owner not only for the value of the property actually taken but also for damage caused to his remaining portion after the taking. Louisiana Highway Commission v. Guidry., supra.' See State v. Landry, 219 La. 721, 53 So.2d 908.

"In Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636, the court said that an existing pipe line may be an element used in assessing damages.

"The question of value and damages took up the major portion of the time in the case. While the opposing experts disagreed on values and damages they were all in agreement to the fact that the best and highest use of the land belonging to defendants would be for industrial purposes.

"Plaintiff used as experts Mr. George B. Hines, William B. Coleman and J. G. Love, all licensed realtors from Lake Charles, Louisiana.

"The experts for plaintiff placed a value on the servitude at from $550.00 to $725.00 per acre. Because of the right of way was a servitude they concluded that the land had a 50% loss of value. The experts for plaintiff testified that no damage would result to the land because of the proposed pipe line. Plaintiff also introduced sales of land in the vicinity ranging from about $150.00 to $500.00 per acre. Defendant A. M. Barbe testified he had agreed to take $500.00 per acre for his land and had then withdrawn his offer. Plaintiff also placed on the stand Mr. L. D. Mann, President and General Manager of Cities Service Refining Company, a large oil refinery in the vicinity of the land belonging to defendants. On direct examination he testified that the fact that a 16 inch pipe line, which is the one proposed in this case ran diagonally across the property would not in his opinion affect the value of the land for industrial purposes. However, on cross examination he stated that if he were buying

the land for an industrial site he would remove the pipe line from the property.

"Defendants had as experts large land owners or managers, namely, S. Arthur Knapp, Mr. Harry G. Chalkley and Mr. W. E. Godwin. They placed a value on said land at from $1250.00 to $1500.00 per acre. They testified that the running of a pipe line diagonally across said tracts would ruin it for industrial purposes and then it would have to be used for either agricultural or grazing purposes with a value as testified by one expert of not more than $250.00 per acre.

"Mr. Rowland Preis, as a witness for defendants, testified he had offered a land owner having a tract of land near lands of defendants $1250.-00 per acre for his land. Plaintiff objected to the introduction of evidence to show an offer to buy, citing as his authority Louisiana Railway & Navigation Co. v. Morere, 116 La. 997, 41 So. 236 [238]. The Supreme Court said in this case:

" 'The evidence as to offers of purchase was properly rejected. Offers of purchase are a class of evidence safer to reject than to receive.'

"The Court reserved its ruling on the admissibility of the evidence by Mr. Preis. In view of the above ruling the evidence by Mr. Preis is excluded from the record for purposes of decision.

"The evidence discloses that defendants property is about 1½ to 2 miles from the physical plants of Cities Service Refining Company, Firestone and other industrial plants of large magnitude in the area. The evidence discloses further that some of the corporations in the vicinity have purchased lands for future use which adjoin a portion of the lands belonging to defendants.

"Defendants also had to testify in their behalf a Mr. John C. Calhoun, Jr., a civil engineer from Texas, who had also experience in locating plants. He stated that the defendant's land would be more valuable if sold as a unit rather than in separate tracts and that the running of a pipe line in a diagonal direction would have the effect of cutting the land in smaller parcels thereby making it less valuable for industrial sites. On cross examination he testified that some of the property could be used for industrial sites. The record discloses that some of the existing industries in the area own tracts which consist of 60 and 80 acres on which their plants are located.

"There are two tracts involved. Tract No. 1, consisting of 80 acres, is owned in indivision by Alfred M. Barbe and Lucius L. Moss.

■ "The 30 foot right of way or servitude consists of 1.14 acres. Considering the testimony of all the witnesses the court is of the opinion that $1,000.00 per acre or $1,140.00 would be adequate compensation for this tract. As said by Justice O'Niell in Texas Pipe Line Co. v. National Gasoline Company of Louisiana, 203 La. 787, 14 So.2d 636, there is not much difference between the value of the right of way or servitude and the land embraced in it.

■ "The next item is one of damages. The North half of the 80 acre tract will be intact after the granting of the right of way.

"The servitude cuts the south half of the tract leaving about 15 acres cut off from the 80 acre tract. It was conceded by John C. Calhoun, Jr., witness for defendants, that 65 acres could be used for an industrial site. The 15 acres can still be used for agriculture or pasturage uses. The court fixes the damages to the land at $11,250.00 which is the difference between the value the 15 acre tract would have for industrial purposes of $1,000.00 and the value it would have for agriculture or pasturage purposes of $250.00 or a difference of $750.00 per acre.

"The total award for tract one is fixed at $12,390.00 to be divided equally between defendants Alfred M. Barbe and Lucius L. Moss.

"Tract No. 2 consists of 200 acres and is owned in its entirety by Alfred M. Barbe.

"The amount of land in the right of way is 2.205 acres. The acreage at $1,000.00 per acre totals $2,205.00 which amount the Court fixes as compensation for said servitude.

"The next matter is to determine the amount of damages to Tract 2.

"The 200 acre tract owned by defendant Alfred M. Barbe is all located in Section 26, Township 10 South, Range 10 West.

"The proposed pipe line servitude runs through portions of NE¼ of SW ¼, SW¼ of NE¼, and NW¼ of SE ¼ of Section 26 in a diagonal direction running northwesterly through said tract. It is difficult for the court to place the damages which should be assessed as to Tract No. 2.

"It is more difficult for the court to determine the damages which will be suffered by defendant, Alfred M. Barbe as a result of the pipe line going through his 200 acre tract. As stated before there are 3 40-acre tracts directly affected by the proposed pipe line. There is no question in the mind of the court that a 16 inch gas pipe line would affect the location and building of a petro chemical plant or any other similar plant due to the danger involved by reason of an existing gas pipe line. There are 2 40-acre tracts

over which the pipe line does not traverse. However, these tracts will be affected to some extent considering that some of the tracts will be divided in triangles by the proposed pipe line. The court is of the opinion that the entire tract will suffer a 15% decrease in value for the purpose of industrial site or sites; that it will be available for grazing and farming and that an award of $22,500.00 as damages to the entire tract is proper. Accordingly, the amount awarded to the defendant Alfred M. Barbe for compensation and damages is the sum of $24,705.00.

"For the written reasons assigned judgment is hereby rendered as follows:

"As to Tract No. 1 in favor of plaintiff Texas Pipe Line Company and against defendants, Alfred M. Barbe and Lucius L. Moss granting to plaintiff, a right of way or servitude 60 feet in width over the land belonging in indivision to defendants and described in this suit, during the construction of said pipe line and at the completion thereof said pipe line to revert back to 30 feet wide and to remain at said width for the duration thereof. The ownership of said servitude to vest in plaintiff upon its paying to Alfred M. Barbe and Lucius L. Moss each the sum of $6,195.00.

"As to Tract No. 2 in favor of plaintiff, Texas Pipe Line Company and against Alfred M. Barbe, granting to plaintiff a right of way or servitude 60 feet in width over the land belonging to defendant, and described in this suit, during the construction of said pipe line and at the completion thereof, said pipe line to revert back to 30 feet wide and to remain at said width for the duration thereof. The ownership of said servitude to vest in plaintiff upon its paying to Alfred M. Barbe the sum of $24,705.00.

"Plaintiff to pay all costs of this suit."

Judgment affirmed.

McCALEB, J., dissents, being of the opinion that the awards are excessive.

### On Rehearing

PONDER, Justice.

We granted a rehearing in this case in order that we might reconsider our decree relating to the severance damages that might be occasioned to the lands of the defendants adjoining the pipe line right-of-way, and the rehearing was limited to this question.

The pipe line right-of-way traverses diagonally a 200 acre tract of land owned by the defendant, Barbe, and an 80 acre tract of land owned by the defendants, Barbe and Moss. There is to be laid a sixteen inch high octane gas pipe line in this right-of-way.

The evidence shows that the best possible use of these lands would be for industrial purposes and that it has not been so used up to the present time. The nearest industry to the lands is some one and one-half to two miles distant. There is no evidence in the record that any one has sought to acquire these lands for industrial purposes. The land is now used for pasturage purposes.

The evidence as to whether or not the pipe line would depreciate the value of the property adjoining the right-of-way is very conflicting and uncertain. Three licensed realtors and the President and General Manager of Cities Service Refining Corporation, an industry located in the vicinity, testified that the pipe line right of way would not damage or depreciate the value of the adjoining property. On the other hand, two engineers, and one of the defendants, testified that it would damage the adjoining property and render it unsuitable for industrial purposes and make it suitable only for pasturage and farm purposes, thereby reducing its value. These are the only witnesses who testified as to the severance damage.

The testimony is conflicting and is such that the damage, if any, is speculative and remote. We cannot say from the evidence that this property will ever be used in fact for industrial purposes or that it cannot be so used in the future.

We are aware of the decisions of this Court allowing damages when there is positive proof of such, but the damages claimed must not be anticipated damages, nor remote or speculative. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672; Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193; American Tel. & Tel. Company of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4; State of Louisiana Through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881. Therefore, under the circumstances, we cannot say that the defendants have proven by a preponderance of evidence that the adjacent lands would be damaged by the pipe line right of way.

For the reasons assigned, the award in the judgment of the lower court for severance damages is set aside and the judgment is now amended so as to award Alfred M. Barbe $2,775 and Lucius L. Moss $570 and, as thus amended, the judgment is affirmed. All costs to be paid by the plaintiff, The Texas Pipe Line Company. Defendants right to apply for a rehearing is reserved.

MOISE, Justice (dissenting).

The opinion on rehearing disallows all severance damages. Severance damages were allowed because of the harm done, in the opinion of the district court judge, to the remaining land. His judgment is now reversed on rehearing, as well as the original judgment of this Court. The reservation of the right to apply for a rehearing should have been made.

The object of judicial investigation is the ascertainment of truth. Evidence is

the means by which that is effected. It variously adjusts itself, to perform its task in most certain and direct ways some things are self-evident—others are proven by the senses. But, there are other subjects which address themselves to no palpable standards of truth, but to human experience and the demonstrative physical facts.

The trial judge, from the testimony of the experts, concluded that the property was an ideal location for industrial purposes and that such, on his part, was predicated in the main on expert testimony.

Mr. Calhoun is an engineer of long experience, and he concluded his opinion on the basis of demonstrative physical facts. He said that this area is one of the prime industrial areas of the Gulf Coast; that it was in close proximity to the ship channel; that there were railroad facilities; that it has access to a highway close by; and that there was a paved concrete highway from Sulphur passing only a few hundred feet from this property. He stated that it was adequately separated from the other industries, and that the fact that there is some intervening space would, in his opinion, make it more suitable than if it were closer to existing industries. (Tr. Vol. 3, page 346); that there is abundant available fuel in this area; that there are thirty-three oil and gas fields within an area of thirty miles of Lake Charles, which is only a few miles from this property; that not only are gas and oil available in sufficient quantities for fuel, but they are available for basic

materials for petro-chemical industries that might locate in this area. (Tr. Vol. 3, page 347); that both fresh and salt water, necessary for some industries, are available. (Tr. Vol. 3, page 348); that nearby industries make available by-products needed for certain industries; that it is a common practice to locate processing industries adjacent to such industries as are already located in this area. (Tr. Vol. 3, pages 348, 349).

With all of these magnificent facilities available for commercial purposes, it would hardly be fitting to say that such land is suitable only for pasturage purposes.

Mr. Coleman, a witness for the Pipe Line, admitted that this area offered very attractive advantages to industries, mentioning cheap fuel, sufficient labor, good climate, and availability of by-products from nearby industries. (Tr. Vol. 3, page 215).

Mr. Hines, also a witness for the Pipe Line, said that this area was highly suitable for industries, and mentioned, in addition to the desirable features, the availability of sufficient quantities of salt and sulphur, which are essential to the production of certain chemicals.

We merely mention these demonstrative facts to show that this record contains an abundance of evidence why we should not adopt mere legal abstractions or things that are supposed.

The defense witnesses were of the opinion that the running of this servitude diag-

onally through the two tracts was ruining the land for future industrial purposes. See the testimony of Barbe, Tr. Vol. 3, pages 237, 238, 239; Chalkley, Tr. Vol. 3, page 258; Knapp, Tr. Vol. 3, page 270. The industrial engineer, Mr. Calhoun, was of the same opinion, and he said that no industry would want a pipe line on its property. Mr. Calhoun also said that no industry would locate a building close to a pipe line. (Tr. Vol. 3, page 365).

These facts demonstrate severance damages that should be imposed for the remaining land not taken.

Mr. Mann, President and General Manager of the Cities Service Refining Company, said that it would not be a good situation to have men going through his plant day and night inspecting, maintaining, repairing and replacing pipe lines, and that if he had one on his property he would move it.

Mr. Calhoun said that it was possible that an industry might want the sixty-five acres remaining of Tract One, but that he could think of no industry locating in this area that would want small tracts. (Tr. Vol. 3, page 375).

Now, as a fact, what did the Pipe Line do after expropriating this property? It cut Tract No. 2 into two triangles, and by cutting a triangular piece of land off of Tract No. 1 it has greatly lessened the opportunity to sell the land to industries of any size, and has almost certainly made it impossible to sell to larger industries.

Before this expropriation of the right-of-way, the defendants had 280 acres of land in one block. Now they have two triangular shaped tracts and one irregular shaped tract. In Tract No. 1 there is cut off 15 acres, which rendered that acreage virtually valueless for industrial purposes, if we are to take the testimony of the expert witnesses of both sides.

The judgment on rehearing allows for a valuation of the land of $1,000 an acre. The 15 acres separated from the land, which rendered it unfit for industrial purposes, has a valuation of only $250 an acre, and that is for pasturage purposes.

From the very concession of the opinion on rehearing, there must be severance damages as to the difference of land at $1,000 an acre for 15 acres of land, which is reduced in value from $1,000 to $250. That on its face shows a severance damage of $11,250. So, how could there be any disallowance of all severance damages?

There are two facts that stand in bold relief. The trial judge saw and heard the witnesses, and he is in a better position than we to evaluate their testimony. The trial judge is familiar with the location of the property.

The facts and the demonstrative physical facts are the true and only foundation for belief.

I, therefore, respectfully dissent.

HAWTHORNE, Justice (dissenting in part).

The judgment of the district court awarded the defendants in this case large sums as severance damages, or damages caused to the remaining portion of the property after the taking, and on original hearing this court affirmed that judgment. I voted for a rehearing in this case because I was of the opinion that the amount awarded for severance damages was excessive and that further consideration should be given to the amount of this award.

I do not agree, however, with the holding of the majority on rehearing that the severance damages sought are speculative and remote and that the defendants are not entitled to any such damages. It is my view that there is ample evidence in the record to justify an award of severance damages; the only question in my mind is the proper amount.

On Second Rehearing.

HAWTHORNE, Justice.

We granted another rehearing in this case so that we could give further consideration to the judgment of the lower court awarding these landowners severance damages. Moss and Barbe were allowed $11,250 as severance or consequential damages resulting from the expropriation of a 30-foot right of way across 80 acres of land owned by them (Tract No. 1), and Barbe was given $22,500 as damages resulting from the expropriation of the right of way diagonally across a tract of 200 acres owned by him (Tract No. 2). The right of way is to be used by the Texas Pipe Line Company in the construction of a 16-inch pipeline for the transportation of high octane gasoline.

The property crossed by the right of way is near large industrial plants, two ship canals, a railroad, and a public highway. Due to the location of these two tracts it is conceded by all parties that they are suitable as industrial sites and have a high market value. Plaintiff's experts fixed the value of the land at from $550 to $725 an acre, and testified that the construction of the pipeline would not cause any damages whatever to the land adjoining the right of way. In contrast, defendants' experts placed a value on the property of from $1,250 to $1,500 per acre immediately prior to the expropriation, but testified that the construction of the pipeline across these two tracts would spoil them for any industrial use whatever and leave them suitable only as agricultural or grazing lands. For this reason defendants contended in the lower court that they were entitled to recover as severance damages the difference between the value of the property for industrial uses ($1,250 to $1,500 per acre) and its value for agricultural or grazing purposes ($250 per acre).

The trial judge found that the land in both tracts had a value of $1000 per acre, and in our original opinion in this case we upheld this finding. Tract No. 1, owned by Moss and Barbe, contains 80 acres, and the right of way cuts across the south

portion of this tract, leaving 15 acres in a triangle on the south side of the right of way and 65 acres on the north side. As severance damages the trial judge awarded $11,250 to the owners of this tract because he was of the opinion that the 15-acre triangular piece had been ruined for industrial purposes, and that defendants were entitled to receive the difference between its value prior to the expropriation of $1,000 per acre and the value of $250 per acre it would have for agricultural or pasturage purposes after the pipeline was laid. Tract No. 2 comprises approximately 200 acres, and the right of way crossing this tract cuts it into two somewhat irregularly shaped parcels of approximately equal size. The trial judge reasoned that the owner Barbe had suffered consequential damages to this 200-acre tract of 15 per cent of the difference between its value for industrial purposes and its value for agricultural purposes, and since 200 acres were involved he awarded Barbe $22,500, or 200 x 15% of $1,000—$250.

It must be borne in mind that we are not here dealing with a right of way for a road or highway or a cable buried below plow depth, but are dealing with a right of way for a 16-inch high pressure pipeline transporting high octane gasoline. This pipeline is potentially dangerous. Leaks are expected to occur in the line from time to time, and when leaks do occur explosions may result. The record shows that the pipe extending across these two tracts, for instance, will hold approximately 48,000 gallons of high octane gasoline, and that it would be dangerous to locate any structure or industry over the line or in its immediate vicinity. For these reasons we are convinced that defendants have suffered damages to their remaining property because of the expropriation.

In Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636, 638, plaintiff (apparently the same company as the plaintiff in the instant case) expropriated a right of way for the construction of a high pressure eight-inch gasoline pipeline buried 18 inches below the surface. In that case the court found that, although there was not much actual danger that a leak would occur in the pipeline, the mere fact that the high pressure pipeline was there had the psychological effect of deterring prospective purchasers of the adjacent land and of impairing the commercial value of the property adjoining the right of way. In affirming a judgment of the lower court awarding severance damages to defendant in that suit this court said:

"The argument for the plaintiff that there is no real danger or reason for such fear has no force against the fact that the fear exists and is unavoidable. The fear of danger in some cases is as bad as the danger itself—it is a condition—not a theory."

In the instant case we think the evidence shows that a real danger exists, and for this reason if for no other it is

clear to us that the value of the adjacent land has depreciated and that defendants here have suffered severance damages. Although plaintiff's experts testified at the trial that defendants' remaining property was not injured by the pipeline, they offered no reasons for this opinion, and therefore it remains only a conclusion on their part and is not impressive.

Although we do not agree with the landowners' contention in the lower court that the property in question has been ruined for all industrial purposes, we think that the percentage method used by the trial judge in computing the severance damages is legally incorrect, and the award appears to us to be excessive.

■■■ "It is the well-settled jurisprudence that the damages allowable under Section 2 of Article 1 of the Constitution of 1921, resulting from expropriation of property rights are the difference between the market value of the property for sale or rental purposes, immediately before and immediately after the expropriation. Mere consequential injuries to the owners arising from discomfort, disturbance, injury to business and the like are damnum absque injuria. See Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354 and cases there cited." American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 743, 54 So.2d 4, 5, Note 2.

■■■ Since we have concluded that defendants in the present case have suffered some severance damages, we have decided, in the interests of justice and under the authority of Article 906 of the Code of Practice, to remand this case to the lower court to permit the defendants to establish by competent evidence the difference between the market value of each tract for sale or rental immediately before and immediately after the expropriation, and in determining this market value the use to which the right of way is being put and the size and irregular shape of the lands on each side of the pipeline must be considered. To make ourselves perfectly clear, defendants must effectively show the market value of each tract immediately before and immediately after the expropriation in order to establish the quantum of their severance damages.

The case is remanded to the lower court for further proceedings consistent with the views herein expressed; all costs are to be paid by Texas Pipe Line Company.

McCALEB, Justice (dissenting).

I have been and still am of the opinion that the defendants in these cases have been handsomely paid for the farm lands expropriated herein for the use of plaintiff's sixteen inch pipe line for transportation of high octane gasoline. Their claims for severance or residuum damages are highly speculative and this court's rejection of them on the first rehearing was fully supported by the record and the pertinent authorities on the subject.

The view on this second rehearing is that a pipe line containing gasoline is dangerous and has the psychological effect of deterring prospective purchasers of the adjacent land, thus necessarily impairing the commercial value thereof. In such circumstances, it is said that justice requires a remand of the case in order to give defendants another day in court to introduce testimony to show that the market value of the land has been lessened since the taking. The case of Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636, is cited as supporting authority.

I see no applicability of the decision relied on to the facts of this case. In that matter, the land being expropriated had a marketable value for residential purposes and, in fact, had been purchased by defendant in 1928 with the specific design of constructing a residential subdivision adjacent to Bossier City. The claim for severance damages was founded on the theory that the adjacent land for a distance of 50 feet on each side of the 20 foot right-of-way taken by plaintiff was diminished in value as a result of the psychological effect it had in deterring prospective purchasers of homesites. This claim was sustained by evidence and the jury of freeholders allowed severance damages amounting to 50% of the market value of the land lying within 50 feet from the right-of-way.

In the case at bar, there is no claim that the lands are suitable for residential purposes. The only showing is that, in in addition to their natural fitness as cut over pasturage lands, they have a potential adaptability, by reason of location, for use as sites for commercial or industrial enterprises. There is no proof that persons, who may some day be interested in any of the land for such purposes, will be deterred from purchasing it because of the proximity of part of it to plaintiff's pipe line or that they may fear that whatever business they intend to pursue upon the land may be endangered by its nearness thereto. Nor is it claimed by defendants that the case should be remanded or that, upon the remand, any such evidence will be available.

To send the case back to the lower court under these conditions for the purpose of permitting defendants to establish the market value of each tract of land for sale or rental immediately before and after the expropriation is to invite the admission of more speculative testimony as it should be obvious that whatever evidence is elicited on the remand, touching upon whether a willing industrial purchaser would be deterred, by the nearness of the pipe line, from offering as great a sum for any of the lands as he would otherwise be willing to pay, would not be founded on fact but would necessarily emanate from opinions based on pure conjecture.

I respectfully dissent.