201 So.2d 346 (1967)
LOUISIANA POWER & LIGHT COMPANY, Plaintiff and Appellant,
v.
Melville S. DIXON, Jr., et al., Defendant and Appellee.
No. 10830.
Court of Appeal of Louisiana, Second Circuit.
June 30, 1967.
*347 Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellant.
McHenry, Snellings, Breard, Sartor & Shafto, Monroe, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
Louisiana Power and Light Company appeals from judgment awarding defendant property owners $14,668.31 for property taken and severance damages resulting from the expropriation of a 150-foot right-of-way comprising 3.53 acres across 41.5 acres of defendants' land for the installation of a 500,000-volt power transmission line. Appellees have answered asking for an increase in the award to $26,500.00.
The right to expropriate the property is not questioned and the sole issue is the amount of compensation due the property owners.
Subject property is located in Ouachita Parish adjacent to the city limits of Sterlington. It is a peninsula jutting into Lake Bartholemew which, in recent years, has been maintained at a constant level by means of pumps and flood gates. Fresh water is brought into and released from Lake Bartholemew via Bayou Bartholemew. Property abutting the lake has become very desirable for the location of camps and permanent homes. Several subdivisions have been created in the vicinity of defendants' property which, according to the testimony of all witnesses, is the most desirable peninsula on the lake. The elevation and slope of the property provide excellent drainage and the shoreline is variable, potentially affording a great number of lakefront lots. Around the outer edge of the peninsula are stately woods and the remainder of the property is heavily spotted with wooded sections.
The right-of-way extends a distance of approximatey 1,000 feet across the entire entrance or "mouth" of the peninsula. It adjoins an existing right-of-way 100 feet wide which is utilized for a power line smaller in size and transmitting only 115,000 volts. Plaintiff's power lines are strung on steel structures 150 feet high, each set in concrete and occupying a base of 16 feet by 45 feet. The steel towers are designed to carry eleven or more lines to be maintained at a minimum clearance of approximately 27 feet above ground. One tower, located on defendants' property, had been constructed on the date of the trial. The only entrance by land to the property would be effected by passage underneath the electric transmission lines.
In order to arrive at the amount due defendants for the right-of-way plaintiff offered the testimony of Dean Carter and Wayne Medley as expert appraisers. Experts testifying for defendants were James Beaver, Jack Smith, Roy M. Gochenour and *348 Lester High, the latter being a civil engineer. Even though the land was raw acreage all witnesses agreed its highest and best use would be for development as residential property.
The law is well settled that the amount to be awarded for private property expropriated for public purposes is its market value when taken. The market value of property is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So. 2d 541, (1954). In arriving at market value the highest and best use to which land can be put is a determinative factor, and proof of its suitability for a subdivision is quite pertinent. City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445, (1951).
In addition to compensation for property taken the land owner is also entitled to compensation for damages to remaining property caused by the use to which the property taken has been put. Texas Pipeline Company v. Barbe, 229 La. 191, 85 So.2d 260, (1955).
Utilizing approaches such as abstraction, capitalization, market data, etc., each expert arrived at a different value of the acreage expropriated. We have carefully analyzed testimony of each witness and any attempt to summarize their conclusions and reasons would tend only to render this opinion less understandable and more complicated. The purpose of an expert witness is to give an opinion based on his professional qualifications and experience. In an effort to give objective reasons for his opinion an expert frequently resorts to the use of various methods and approaches. It is appropriate to observe that because of insistence by counsel and courts that objective reasons be given for every conclusion, many experts are unable to give a simple opinion without it becoming lost in a maze of technical theories.
It was the duty of the trial judge to analyze all legal evidence, including the testimony of the experts, and from such evidence reach a common sense conclusion. The value of the tract was calculated by projecting the raw acreage into a subdivision. Then, by using comparable sales listed by plaintiff's and defendants' appraisers, he calculated the gross value of the entire 41.5 acres. From this gross figure was deducted the estimated cost of developing the acreage into a subdivision. The court then arrived at a square foot value of the land and thus calculated the fee value of 3.53 acres included in the right-of-way to be $10,778.85.
He concluded the residual value, subject to the servitude of right-of-way, was $500.00 per acre. A total of $9,526.17 was awarded for the right-of-way expropriated. The estimate of the residual value is supported by the evidence as all the testimony was that the property under the power line would be of little value.
The trial judge further found the use of the property taken would damage the remainder of the land to the extent of 5% of the total value and allowed severance damages of $5,142.15. Appellant claims there was no severance or consequential damage and appellees just as vigorously contend the percentage should be 10% rather than 5%. The percentage method of fixing severance and consequential damages in expropriation cases has been approved by our courts, Central Louisiana Electric Co. v. Fontenot, (La.App. 3 Cir. 1964), 159 So.2d 738. Various percentages have been used depending upon the facts of each case and we see no error in the 5% used in the instant case.
We find the trial judge's opinion is supported by law and sound logic and accordingly the judgment appealed from is affirmed at appellant's cost.
Affirmed.