BAILES, Judge.
This is an expropriation proceeding instituted by plaintiff, Humble Pipe Line Company (Humble), to acquire the right to place a sixteen inch pipe line across certain property of defendant, Wm. T. Burton Industries, Inc. (Burton), located in Iberville Parish. After lengthy proceedings in the trial court, judgment was rendered in favor of Humble and against Burton awarding Humble the right it sought upon the payment to Burton of the total sum of $13,649.-04 in compensation and damages. Additionally, Humble was cast for all court costs, including $3,600 as fees for Burton’s expert witnesses. Being dissatisfied with the judgment of expropriation, the amount of the award for compensation and damages and the assessment of fees awarded the defendant’s expert witnesses, the defendant has appealed. The plaintiff, likewise dissatisfied with the trial court’s judgment, has answered the appeal contending that the trial court’s award of compensation for the taking and the assessment of damages and expert witness fees were all excessive and should be reduced. We find the award of the trial court for compensation is excessive and will be reduced, and that the award of damages is not recoverable, however, in all other respects the judgment is affirmed.
In 1943, Humble acquired its initial right of way across the subject property from the Burton-Sutton Oil Company for the laying of an eight inch pipe line. In 1953, plaintiff determined that it needed a larger line, and after failing to amicably agree with Burton, who was then the owner of the property, for the laying of a sixteen inch line and removal of the then existing eight inch line, acquired through appropriate legal proceedings a right of way for the laying of the now existing sixteen inch line. In this instant proceeding, Humble seeks the right to place an additional sixteen inch line parallel to and ten feet from the existing line and within the boundary of the existing fifty foot right of way. After negotiations proved unfruitful of agreement, Humble filed this action to expropriate the right to lay the subject sixteen inch pipe line.
In its petition, plaintiff alleges it is engaged in the transportation of petroleum and petroleum products as a common carrier for hire from points within the state to other points within the state; that it owns and operates a sixteen inch truck pipe line for the transportation for hire of crude petroleum from various oil fields in South Louisiana to its terminal facilities at Anchorage, West Baton Rouge Parish, Louisiana; that in order to construct, lay, maintain and operate said pipe line, it is necessary to cross the property owned by Burton at the place designated by Humble. Further, plaintiff alleges it is necessary to the public interest, convenience and necessity that it acquire the right to lay and construct said *727 additional line as above shown; that Burton has refused to amicably grant the right of way except upon the payment of compensation and damages equivalent to $75 per rod.
Burton filed certain dilatory and peremptory exceptions. No useful purpose is to be served by a detail recitation of the contents of these exceptions, and suffice it to say that the purpose and import of these exceptions are to contest the necessity of the plaintiff to construct and lay this additional sixteen inch line across defendant’s property. In these exceptions, the defendant urges that the plaintiff is seeking to take private property beyond the public interest and necessity because the plaintiff can serve its needs with its existing pipe line which now traverses the-Burton property.
The defendant makes the following assignment of errors of the trial court and its judgment:
“1. The trial court erred in permitting the Plaintiff to expropriate a right of way for a new pipeline before Plaintiff had fully utilized its existing expropriated pipeline rights over Defendant’s property, in violation of Defendant’s constitutional and statutory rights and in direct contradiction of the jurisprudence of this State.
“2. The trial court erred in failing to place restrictive conditions on the use of the rights expropriated, and to require that Plaintiff relocate its line on Defendant’s lands should its location substantially interfere with or impede use of the land for industrial purposes, all necessary for the protection of Defendant’s future use and disposition of its lands.
“3. The trial court erred in failing to recognize that Plaintiff’s proposed new line would have an adverse effect on the value of all of Defendant’s lands for use as an industrial plant site, its recognized and best use, and it erred in failing to award Defendant its severance or consequential damages of $247,000.00.
“4. The court erred in excluding relevant and material evidence bearing upon this issue in a most critical fashion.
“5. The trial court erred in failing to recognize that Defendant was entitled to be awarded its full cost and expense incurred in the employment of experts necessary for the defense of this suit.”
We will now proceed to consider these alleged and assigned errors.
The defendant does not question the right of the plaintiff to expropriate property. Plaintiff alleged that it operated existing pipe lines for the transportation or movement of crude petroleum from one point in Louisiana to another point in Louisiana for hire, however, the contention the defendant does raise by the exceptions is that plaintiff, by proper utilization of its present facility, can transport all the crude petroleum it has demand to transport, both now and in the foreseeable future, through its existing line; that by the increase of pressure to be attained by increase of its pumping stations horsepower, sufficient liquids can be pushed through the existing line to meet its customers demands. In essence, defendant contends through proper management of plaintiff’s present system there is no public interest or necessity to be served by the additional taking of defendant’s property, or the installation of the additional sixteen inch line.
LSA-R.S. 45:254 expressly grants to common carrier pipe lines, as defined by LSA-R.S. 45:251 and 45:252, the right of expropriation with authority to expropriate private property under the state expropriation laws for use in its common carrier pipe line business. Unmistakably, and it is not questioned by defendant, the plaintiff is a common carrier within the terms of the definition provided in LSA-R.S. 45:251 and 45:252.
The proof in the record clearly demonstrates to our satisfaction that the plaintiff, through its expert and technical services and trained specialists, has conducted a *728 study of its projected demand for crude petroleum transportation through 1975, and that its considered conclusion is that the additional loop or parallel line will be required to keep pace with demand. The only witness offered by the defendant in support of its position, Mr. J. J. Hindman, testified, in effect, that from the study he had made of the plaintiff’s business he was not in position to challenge the conclusion of the plaintiff to its need for the proposed additional sixteen inch pipe line.
The witness disqualified himself on the question of the nonfeasibility of this line by the admission that he had not conducted an adequate study to determine such a question. He testified that Texaco was building a refinery below Donaldsonville, however, he was unable to state that Texaco would take any of Humble’s supply of crude petroleum from the area served by the plaintiff’s pipe line.
In the absence of clear, unequivocal and convincing proof that the proposed facility can serve no public interest, the court is not warranted or justified in substituting its own judgment that the facility is not needed in the industry. In our opinion the record clearly points up the projected need for this additional pipe line, and the action of the plaintiff is in anticipation of the future needs of the crude petroleum transportation industry.
The plaintiff cites the cases of Central Louisiana Electric Company v. Covington & St. Tammany L. & I. Co. (1961) La.App., 131 So.2d 369 for the legal proposition and pronouncement that the courts will not disturb or interfere with the exercise of the discretions of the expropriating agency as to what is necessary for its purposes, however, we do not find that what we said in that case is apropos to the question of public need.
However, plaintiff cites also the case of Parish of Iberia v. Cook (1959) 238 La. 697, 116 So.2d 491, which is in point. Therein the Supreme Court, in discussing and passing on the question of public need for a new hospital facility proposed by the Iberia Parish Police Jury, stated:
“[3] In the performance of its duty of safeguarding the health of the general public great latitude and much discretion is permitted to the Parish officials. It is well recognized that the judiciary will not disturb the exercise of this right in the absence of fraud, abuse or bad faith, nor substitute our own views and opinions.
j}c >>
We find that the trial court correctly overruled the exceptions filed by the defendant.
Next, we will consider the defendant’s complaint that the failure of the trial court to include in its judgment restrictive conditions on the use of the right expropriated, to require that plaintiff relocate its line on defendant’s land should its location substantially interfere with or impede use of the land for industrial purposes. Defendant’s position is that this is necessary for the protection of defendant’s future use and disposition of its land.
In support of its effort to have included in the judgment the conditions relative to relocation of the servitude, defendant cites the case of Louisiana State Department of Highways v. Burden (1965) La.App., 180 So.2d 784. This case, however, is inappo-site to this case factually. In the Burden case the servitude referred to was that of a roadway, whereas here we are concerned with a pipe line beneath the land surface.
The conditions on relocation cannot now be dictated with any sort of finality or accuracy, and whatever we might attempt to do would be highly speculative of the court. Rather than attempt to provide for the parties restrictive conditions of use and removal and to provide for the unknown, we find it more desirable for the accomplishment of the purpose of the expropriation statutes to *729 relegate the parties to the existing orderly legal processes for a grantor to be relieved of any unduly burdensome servitude. See LSA-C.C. Article 777. Overlaying the whole issue of relocation injected by defendant into this expropriation is the absolute absence of any showing that this servitude is burdensome to defendant. The question of relocation of the pipe line is premature at this time. The law of our state has bestowed upon the plaintiff, and others similarly constituted, the legal right to expropriate this property from the defendant and in order to enjoy this right it must pay the fair, just and adequate compensation to defendant therefor.
We will now proceed to consider the value of the property expropriated, and the allied questions of severance and other damages to the defendant’s property.
In this appeal, the defendant does not question the correctness of the amount awarded by the trial court as compensation for the taking of the right of way. The trial court determined that the highest and best use of the land, was for industrial development. In this finding all expert witnesses agreed. The court found that the land was worth $1,300 per acre. It further determined that fifty percent of its value was diminished by the expropriation of 1953, and that the present taking' will depreciate the property the remaining fifty percent. Consequently, it reasoned that defendant was entitled to be awarded the sum of $650 per acre for the 8.01 acres expropriated, or the sum of $5,206.50.
Plaintiff, in its answer to the appeal, takes the position that the value fixed by the trial court is excessive and should he reduced to $1,000 per acre. Plaintiff further argues that the second line does not totally diminish the remaining value of the land encompassed within the right of way. Plaintiff contends that the second taking did not take more than eighty percent of the remaining value.
We find there is merit to plaintiff’s position that the second taking did not completely dissipate the remaining value of the property. There is testimony in the record that there is no restriction on the surface use of the property except that it cannot be used in a manner such as to deprive the plaintiff service access to the line in the future. It was shown that the land could be used, in an industrial use, for a street or parking lot, to mention only two uses. The granting of this right of way does not interdict the property for mineral development or any other surface use not inconsistent with the conditions above set forth. Therefore, it is clear to us that there is a residual value left in the property after this second taking.
The plaintiff’s expert witness, Mr. Bahlinger testified that in his opinion, based on sales of comparable property along the Mississippi River, the value of the property was $1,100 per acre, and that after the second taking the remainder of the 8.01 acres of the right of way had a value of five percent of the original value, or a total remaining value of $55 per acre. Mr. Driggers, another plaintiff expert testified that he was of the opinion the property had a value prior to any taking of $1,200 per acre, that the first taking took fifty percent of the value, and the second taking diminished the value of the remaining servitude area by seventy percent, and that there remained a value of $180 per acre.
The defendant’s expert appraiser, Mr. Williams, calculated a residual of $90 per acre based on a value of $1,455 per acre.
From the record it appears that all of the experts used, not exactly in each case, but practically the same comparable in arriving at an opinion of per acre value. On this score, it would be difficult to state that any one value was unreasonable as compared with the determination of the others. For the plaintiff, Mr. Driggers placed a value of $1,200 per acre, and Mr. Bahlinger placed a value of $1,100. For the defendant, Mr. Williams placed a value of $1,455, and Mr. *730 Dugan estimated the value to be $1,500 per acre. It appears that the trial court took the sum total of these different calculations which equaled $5,255, divided this amount by four which rendered a calculation of $1,313.75 which was rounded off at $1,300 per acre. We have no criticism of this finding.
We find no manifest error in the trial court’s conclusion that the right of way land had a value of $1,300 per acre, however, as stated supra, there is a residual value in this encumbered area. We find that a fair and reasonable value, based on a per acre value of $1,300, of the residual rights in the 8.01 acres, is the sum of $130 per acre, or ten percent of its unencumbered value of $1,300.
Passing now to a consideration of crop damages, the plaintiff’s position is that the highest and best use of the subject property is for agricultural purposes, and in its assumption that this is its highest and best use strenuously urges the court that the award for crop loss should be reduced from $8,-442.54 to $4,000.
It must be observed that plaintiff stands alone in the contention that the highest and best use of the property is for agricultural purposes, for as noted supra, all of the expert appraisers are unanimous in their conclusion that the highest and best use of the property is for industrial development. In view of our finding that defendant’s property is industrial, all claims for crop loss, replanting costs and loss of revenue, or sugar cane tonnage, for the sugar mill must be rejected.
A case in point is State Through Dept. of Highways v. D. H. Sanders Realty Company (1963), 244 La. 934, 155 So.2d 24. Therein the Supreme Court was considering the correctness of an award made in an expropriation proceeding wherein an award of $31,536.75 was made for 18.02 acres of land, the highest and best use of which was for gravel mining, plus the sum of $2,252.62 for “surface value”, this “surface value” representing its value as pasture land.
The court stated:
“[4] We recently considered a similar issue in State of Louisiana, through the Department of Highways v. Hayward, 243 La. 1036, 150 So.2d 6, and therein we approved the following language contained in 18 American Jurisprudence, page 878, verbo Eminent Domain, Section 242: ‘When the land taken has valuable deposits of minerals, or contains sand, gravel, peat, or other materials of value, or is covered with growing crops, or trees capable of being converted into lumber, these circumstances may be considered so far as they affect the market value of the land; but part of the realty cannot be separately valued for its materials, as an item additional to the value of the land for the purpose of sale.’ Since the 18.021 acres involved here must be appraised wholly and solely for gravel mining purposes it follows that an additional ‘surface value’ is not allowable.”
In considering prospective loss, no allowance can be made for damages arising from a use of the condemned property apart from its determined highest and best use. In order for the landowner to recover damages arising from the expropriation of property, the damages must be direct and certain and related to and arising out of and resulting from a deprivation of rights connected with the determined highest and best use of the condemned property for which compensation was awarded. Consequently, defendant’s claim for damages to its land, and the expenses for restoration of the land to agricultural use, and for replanting of sugar cane crop and loss of sugar cane tonnage to the sugar mill located on the property, all arising from the expropriation of the right of way, the highest and best use of which was determined to be industrial, must be disallowed.
*731 This brings us to a consideration of whether the defendant has sustained any severance damages.
The trial court, in its written reasons for judgment, stated:
“We will now discuss the question of severance damages to the defendants (sic) property as a result of the construction of the proposed new additional pipeline by the Plaintiff. In the opinion of the Court there are no severance damages to defendants (sic) property as a result of the construction of the proposed new additional pipeline by the Plaintiff. In the opinion of the Court there are no severance damages to defendants (sic) property by virtue' of the construction of said new line, as severance damages if any occurred at the time of the construction of plaintiffs’ (sic) now existing pipeline.”'
From our detailed and careful review of the record in this case, and from the briefs of both the defendant-appellant and the plaintiff-appellee, the question of whether defendant is entitled to severance damages is the main issue of this appeal.
From the defendant’s original brief, we quote its argument:
“Plaintiff contended, and the trial court held, that Plaintiff’s existing pipeline had already severed the property and alleged that no severance damages were due defendant. However, the Defendant’s position is that the Plaintiff’s second line reduces the market value of its entire tract. The Courts have previously considered a number of cases involving claims for diminution in market value resulting from second and third lines, and recognized that additional damages may in fact result from construction of a second line.”
We certainly have no quarrel with the argument that it is possible that the second pipe line of the plaintiff’s could have created severance damages. And assuming, arguendo, that there are severance damages, we find that the defendant has utterly failed to meet the constitutional requirement of proving quantum.
In Texas Pipe Line Company v. Barbe (1955) 229 La. 191, 85 So.2d 260, the Supreme Court considered a case very similar to this instant case. There plaintiff sought to expropriate land for a pipe line right-of-way which would run diagonally across two tracts of defendant’s property. It was established that though the land was being used for agriculture its highest and best use would be for industrial purposes. The trial court in granting the expropriation, found that one tract would be divided by the right-of-way into one large lot suitable for industrial use and one small lot suitable only for agricultural or pasturage uses. As severance damages for this tract the court awarded the difference between the industrial value of the small lot and its agricultural value. The second tract would be divided by the pipe line into two irregularly shaped lots of about 100 acres each. The court concluded that the tract, by being divided into irregular lots, would suffer a 15 percent decrease in value for the purpose of industrial use. On appeal, the Supreme Court affirmed this decision and the award of severance damages. On rehearing, however, the court found that damages to the tract, if any, was too speculative and remote since the evidence made no showing that the property would ever be used for industrial purposes and, therefore, held that no severance damage was proved. A second rehearing was granted. The court then concluded that the pipe line would depreciate the value of the adjoining lands and that defendants did suffer severance damage but that the award previously allowed, was excessive. The Supreme Court said:
“[14] ‘It is the well-settled jurisprudence that the damages allowable under Section 2 of Article 1 of the Constitution of 1921, resulting from expropriation of property rights are the difference between the market value of the property for sale or rental purposes, immediately before and immediately after the expro *732 priation. Mere consequential injuries to the owners arising from discomfort, disturbance, injury to business and the like are damnum absque injuria. See Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354 and cases there cited.’ ”
A large portion of the record in this case is made up of testimony offered by the defendant to prove the cost of relocating the proposed line from the present right of way to some other location acceptable to some unknown and problematical purchaser in the future.
In Texas Pipe Line Company v. Barbe, supra, the court further stated:
“[15] Since we have concluded that defendants in the present case have suffered some severance damages, we have decided, in the interests of justice and under the authority of Article 906 of the Code of Practice, to remand this case to the lower court to permit the defendants to establish by competent evidence the difference between the market value of each tract for sale or rental immediately before and immediately after the expropriation, and in determining this market value the use to which the right of way is being put and the size and irregular shape of the lands on each side of the pipeline must be considered. To make ourselves perfectly clear, defendants must effectively show the market value of each tract immediately before and immediately after the expropriation in order to establish the quantum of their severance damages." (Emphasis supplied)
The only evidence offered by the defendant, in this voluminous record, to establish severance damage was the testimony of its expert appraisers and an expert engineer that any industry that bought the property for industrial development would require that this pipe line be removed to some other location at a cost of $206,865. The record shows that this property comprises approximately 2700 acres, and is located adjacent to White Castle in Iberville Parish. Running westward from the river, the property is first crossed by the levee, next by an adjacent blacktopped highway, Louisiana Highway No. 30, then next by Louisiana Highway No. 1, then the Texas & Pacific railroad right of way, then by the Sugar Bowl gas pipe line, then the plaintiff’s right of way, and lastly by the Southern Natural gas pipe line. The frontage of defendant’s property along the river is about 3800 feet and as the tract extends westward from the river it widens. The length of the pipe line across this property is approximately 7000 feet, entering the property on the south side about 7450 feet from the river and exits the property on the north about 4900 feet from the river.
We have examined with particularity the position of the defendant regarding the issue of severance damages, the evidence in the record and the argument presented in its brief. The inescapable conclusion is that under the facts of this case, we are unable to find, with the legal certainty required by the law regulating such awards, that the defendant has suffered or incurred any severance damages by the expropriation of the right to lay this additional sixteen inch pipe line within the existing right of way and ten feet from the existing pipe line. The idea advanced by defendant as the premise for the establishment of damages, i. e., that it is entitled to be awarded the cost of relocating the pipe line to accommodate some prospective future purchaser, is not in keeping wth the pronouncements of the jurisprudence beginning at least with the case of Texas Pipe Line Company v. Barbe, supra, and consistently applied by the court to the present time. Severance damage is the mathematical difference between the market value of the property immediately before the taking and immediately after the taking. The defendant has failed to show that there has been any diminution in value to the remaining property for industrial use after the taking of the right of way.
*733 In making the award of expert witness fees to the defendant, the trial court stated:
“It is further opinion of this Court that the fees of J. J. Hindman, John W. Dugan, Kermit Williams and Moses Ablemen expert witnesses for defendant, be fixed at the sum of Seven Hundred Fifty and No/100 ($750.00) Dollars each, for work preparatory to testifying at the trial on the merits and that the fee of said experts for testifying at the trial on said merits be fixed at the sum. of One Hundred and No/100 ($100.00) Dollars, each, per day, as follows:
J. J. Hindman (2 days — Nov. 21 and Nov. 22, 1966 — $200.00)
John W. Dugan (2 days — Nov. 21 and Nov. 22, 1966 — $200.00)
Kermit Williams (1 day Nov. 21, 1966— $100.00)
Moses Ableman (1 day Nov. 22, 1966— $100.00)
Said above amounts of fees to be taxed as costs of court.
“The plaintiff is to pay all costs of these proceedings on the trial of this case on its merits.”
The defendant argues that the award for the expert witness fees should be increased to a total of $12,967.23 in relation to its preparation for and trial of this case on the merits, plus an additional $3,060.77 as costs incurred in the preparation for trial of the exceptions before the trial court.
The defendant is entitled to recover expert witness fees for the preparation of their testimony. This is too well established to need citation of authority. The award of the trial court will not be disturbed unless it is manifestly erroneous. Our examination of the record fails to disclose any inadequacy in the award of the trial court.
Defendant claims the trial court erred in not admitting in evidence certain proffered documents as well as certain oral testimony, all now before us under the provisions of LSA-C.C.P. Article 1636. There is no reason for us to analyze herein the testimony and the exhibits contained in the three proffers. These proffers have no probative value. Under the holding of Texas Pipe Line Company v. Barbe, supra, only evidence to establish the market value immediately before and immediately after the expropriation is pertinent. Conjecture and speculation as to what the witness, whose testimony is in the proffer, thinks or believes some unknown prospective industrial developer or buyer might require as to relocation of the pipe line proves nothing with legal certainty as to the price of the property either before or after the expropriation.
The documents, i. e., copies of right of way agreements between other grantors and grantees in distant locations along the Mississippi River, proffered for the purpose of showing that the therein named contracting parties on other occasions have conventionally contracted for the removal and relocation of pipe lines has no material bearing on expropriation of defendant’s property by this plaintiff. Furthermore, such contracts give neither direction nor mandate, nor for that matter, any reason to write into the judgment herein a removal and relocation clause. We find the proffered evidence is not admissible and that the trial court properly excluded it from the record.
For the foregoing reasons, the judgment of the trial court is amended by reducing the award for compensation of the right of way expropriated to the sum of $4,165.20, and all claims for damages are rejected, and in all other respects the judgment appealed from is affirmed. Defendant is cast for the costs of this appeal.
Amended and affirmed.