BAILES, Judge.
This is an action to expropriate property for the purpose of constructing a natural gas transmission pipe line. The land involved herein was owned by defendant, John Schwegmann. Initially, the other defendant was Louisiana & Arkansas Railway Company which owned a reversionary interest in the property. The suit as to the latter party was compromised prior to trial.
The district court rendered judgment expropriating the property to plaintiff, and defendant was awarded a judgment of $9,-584.40, of which $5,100.00 was found by the trial court to be the amount of severance damages to which defendant was entitled.
Plaintiff has appealed from the award of the trial court, and defendant has answered the appeal seeking an increase in the award to $25,000.00.
We find the award of the trial court to be excessive. Accordingly, the judgment will be amended by reducing the quantum, and as amended, affirmed, at defendant’s cost.
On the trial of this case, all issues were stipulated, including the offer by the plaintiff of $7,500.00 to the defendant. The only issue not settled by stipulation was that of quantum which is the only question before us in this appeal.
The positions of the respective parties are these: We find the plaintiff accepting the value fixed by the trial court as correct for the taking of the right-of-way, but objecting to the award for severance dam *248 ages; and conversely, the defendant is complaining that the value fixed for the right-of-way was grossly inadequate, but willing to abide by the amount of severance damages awarded.
The defendant was the owner of 21.54 acres of land in St. Charles Parish which he had acquired from the Louisiana & Arkansas Railway Company for the restricted purpose of constructing a warehouse facility. This property fronted on Airline Highway with its east boundary being the boundary line between Jefferson and St. Charles Parishes at this point. Plaintiff sought expropriation of a permanent right-of-way or servitude 20 feet wide by a depth of 528 feet, or the total depth of defendant’s property along the east line. Additionally, plaintiff sought for the construction of this pipe line the temporary use of a strip of land 35 feet wide adjacent to the servitude area. This permanent servitude is separated from the east boundary of defendant’s property by a five foot wide servitude previously sold to Humble Pipe Line Company for the laying of a 10 inch jet fuel line.
To establish value of the servitude, plaintiff offered the testimony of two expert appraisers, Mr. Max Derbes, Sr., and Mr. Thomas Dupree. Both of these witnesses testified that the highest and best use of this land was industrial and commercial, and both experts established value by the market data approach through the use of the same two comparables. These sales involved two small tracts, one containing 3.652 acres and the other consisted of 6.92 acres, and both tracts were more remote to the city of New Orleans than the subject property.
Mr. Derbes, on the basis of the two com-parables calculated the 20 foot servitude consisting of .2424 acres had a per acre value of $18,000.00. For the value of the servitude he attributed 75 per cent of the value of the fee simple. In this manner he reasoned the servitude had a present value of $3,272.00. For the temporary servitude consisting of .4242 acres he considered the rental value to be 10 per cent of the value of the land, or the sum of $764.00. Although questioned in considerable detail, Mr. Derbes steadfastly maintained that the presence of the pipeline on this property did not diminish its value nor did it restrict the use of the remainder of the property.
Using the same comparables, Mr. Dupree fixed the value of the defendant’s property at $20,000.00 per acre. On this determination of value, he fixed the value of the servitude at 75 per cent of the fee simple value. This put a value of $3,636.00 on the servitude. He calculated the 35 foot temporary servitude to have a value of 10 per cent of the ground value of $20,000.00 per acre which made the value of the use of .4242 acres worth $848.40, which apparently this witness rounded off at $848.00 although the trial court used the value of $848.40. Mr. Dupree found, as did Mr. Derbes, that there was no severance damage to the remainder of the tract except for a five foot strip between servitude and property line, as to which he estimated $788.00 severance damage.
The defendant offered no expert appraiser as a witness to establish a value of the land taken. Although Mr. Schweg-mann testified that he had had considerable experience in acquiring property for use in his supermarket business, both for the consumer outlets and for warehousing purposes, he was not tendered as an expert appraiser. In fact, he stated that he did not claim to be expert except as to his own money. His testimony in chief covered the desirability of this particular tract of land for the use to which he intended, i. e., a warehouse complex to serve all the supermarkets. Defendant further testified to the right-of-way transaction between himself and Humble Pipe Line Company involving a servitude five feet wide contiguous to the east line of his property for a consideration of $5,315.80, computed at $2.00 per square foot. He was unable to break down the $2.00 per square foot price for allocation of a portion for the temporary use of adjacent *249 property, for the permanent servitude or severance damages.
For the purpose of proving severance damages, the defendant was asked on direct examination this question which brought the following response:
“Q. Mr. Schwegmann, how will the construction of this pipeline interfere with any potential use you make of this property ?
“A. It won’t add to its use.”
On cross-examination, Mr. Schwegmann testified that the location of the pipeline would not interfere with his future or projected use of his property, and he acknowledged that the plaintiff had consulted with his architect in finalizing its plans for the location of the servitude.
Mr. Derbes and Mr. Dupree stated they did not consider the transaction between defendant and Humble Pipe Line Company as a comparable for evaluation purposes for the reason it was not an arms length transaction. Humble, in this acquisition, did not have the power of expropriation. Both found that Humble was under compulsion to acquire this servitude for its jet fuel line.
We find that the trial court correcty fixed the value of the servitude and the use of the adjacent 35 foot temporary work area at the sum of $4,484.40.
In fixing the amount of severance damages at $5,100.00, the trial court adopted the following reasons:
“This Court will reject the finding of Derbes that no severance damage was had and will reject the finding of Dupre that only severance damage was had by the five-foot pipe line servitude.
<( * * *
“This Court cannot accept the argument that the existence of a jet fuel line adjacent to the proposed gas pipe line renders severance damages null. Michigan Wisconsin Pipe Line Co. v. Sugarland Development Corp., [La.App.,] 221 So. [2d] 593, and Michigan Wisconsin Pipe Line Co. v. Miller, [La.App.,] 229 So. [2d] 182, hold a second gas pipe line to cause damage equal to the first line.
“Following generally the proximity rule of 229 So. [2d] 182, the Court finds that the 2.55 acres adjacent to the gas pipe line servitude has suffered a 10% loss in market value by reason of the gas pipe line contiguous thereto. The value of the 2.55 acres is $51,000.00. The severance damage is $5,100.00.”
And the court also in its reasons for judgment said:
“Defendant presented no evidence to show severance damage. Hence, the well settled rule that damages to the remaining land cannot be presumed and must be proved with legal certainty would seem to apply here and plaintiff strongly contended that it does.
“However it appears that the Courts have excepted from this rule the severance damages arising from the construction of a gas pipe line.
“This exception had its inception in Texas Pipe Line Company v. Nat’l. Gaso. Co., 203 La. 787, 14 So. [2d] 636, when the Court said: ‘The argument for plaintiff that there is no real danger or reason for such fear has no force against the fact that the fear exists and is unavoidable. The fear of danger in some cases is as bad as the danger itself — it is a condition; not a theory.’
“This departure from the impact rule of damages and its application to severance damages of land was obliquely considered in Tennessee Gas Transmission Co. v. Primeaux, [La.App.,] 100 So.[2d] 917; United Gas Pipe Line Co. v. Nezat, [La.App.,] 136 So. [2d] 76; United Gas Pipe Line Co. v. [New Orleans] Term. Co., [La.App.,] 156 So.[2d] 297; Texas Pipe Line Co. v. Langlinais, [La.App.,] 168 So.[2d] 377; Texas Gas Transmis *250 sion Corp. v. Young, [La.App.,] 198 So. [2d] 453; until Texas Gas Transmission Corp. v. Hebert, [La.App.,] 207 So.[2d] 368, when the Appellate Court recognized the trial court’s finding that a high pressure gas pipe line causes ‘fright, fear and frustration.’
“It now appears settled that the construction of a high pressure gas pipe line has the effect of diminishing the market value of the remaining property in close proximity. In short, fear is an element of damages.”
We are unable to sustain the trial judge in the award of severance damages. There is a total absence of proof of severance damages. The burden is on the defendant to show first the existence of severance damages, and if this is accomplished, then to prove the amount of damages.
There is a stark difference between the instant case and the cases cited by the trial court as well as those cited by the defendant on the question of assessing severance damages.
In his reasons for judgment, the trial judge states there is an exception to the rule that damages to the remaining land cannot be presumed and must be proved with legal certainty in the case of the taking of property for the construction of a gas transmission pipe line. Further, he states this exception and its inception in the case of Texas Pipe Line Company v. National Gasoline Co., 203 La. 787, 14 So.2d 636 (1943). We find on examination of this cited case that there were witnesses who testified to the effect the presence of the pipe line would have on future prospects of sale.
In Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1955), the Supreme Court, on page 270 (85 So.2d), stated:
“[13] In the instant case we think the evidence shows that a real danger exists, and for this reason if for no other it is clear to us that the value of the adjacent land has depreciated and that defendants here have suffered severance damages. * * * ))
And on page 271, the court stated:
“ * * * To make ourselves perfectly clear, defendants must effectively show the market value of each tract immediately before and immediately after the expropriation in order to establish the quantum of their severance damages.”
In Tennessee Gas Transmission Co. v. Primeaux, La.App., 100 So.2d 917 (1958), the court noted that plaintiff’s witness testified that the presence of the pipeline created a dangerous situation and the expert witnesses of defendant testified that the presence of the pipeline depreciated the value of the remaining portion of the tract. There was a factual testimonial basis for the court’s award of severance damages.
The Court of Appeal, Third Circuit, in United Gas Pipe Line Company v. Nezat, La.App., 136 So.2d 76 (1961), remanded the case to the trial court for the reasons stated thusly :
“[8] Since we have found that the evidence excluded by the trial judge is admissable in evidence and also that the defendants may suffer severance damages because of the taking, we hereby remand the case to the district court to permit defendant to introduce the improperly excluded evidence as well as any other comparable sales to expropriating authorities. Also, defendant must be permitted to prove any severance damages, which under the facts of this case are provable by establishing the difference between the market value of the remaining land immediately before and immediately after the expropriation. To make ourselves perfectly clear, defendants must effectively show the market value of the remaining property immediately before and *251 immediately after the expropriation in order to establish the quantum of severance damages, if any.”
The expression of this Court in United Gas Pipe Line Co. v. New Orleans Term. Co., La.App., 156 So.2d 297 (1963), at page 305, negates the exception which the trial judge in the instant case considered exists, in commenting on the awarding of severance damages, when we stated:
“[14 — 16] In addition to the proven market value of property expropriated, the owner is entitled to he compensated for damages sustained by his remaining lands, if any, caused by the taking. Art. I, § 2, Const.1921, LSA; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Texas Pipe Line Co. v. Barbe, supra. The proper measure of severance damages resulting from the expropriation of property rights is the difference between the proven market value thereof immediately before and immediately after the expropriation. State of Louisiana, Through Department of Highways v. Central Realty Investment Company, Inc., 238 La. 965, 117 So.2d 261; Harrison v. Louisiana Highway Commission, 191 La. 839, 196 So. 354; Texas Pipe Line Co. v. Barbe, supra. Severance damages to be recoverable must be reasonably prospective; they cannot be recovered when they are merely anticipated or so remote as to be characterized as speculative. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672.
“Mr. Lemarie’s opinion was that the property immediately adjoining the servitude for a distance of 100 feet back, both along the I.C. right of way and LaBarre Road would suffer to the extent of 25 cents (or 20%) per square foot and that the balance of the property would suffer to the extent of 10 cents (or 8%) per square foot, according to which formula he estimated the aggregate damage to be $203,866.05. But Mr. Lemarie frankly admitted that he knew of no tract of land in the area of defendant’s property upon which there is located a natural gas transmission line sold as an industrial site which had depreciated in value by reason of the location of the pipeline on the property. We cannot accept Mr. Le-marie’s more or less arbitrary establishment of the damage; moreover, the amount appears excessive.
“In Texas Pipe Line Co. v. Barbe, supra (on second rehearing), the trial judge reasoned that the owner may have suffered consequential damages to his 200 acre tract of 15 percent of the difference between its value ($1,000) for industrial purposes and its value for agricultural purposes ($250), and that since 200 acres were involved, he awarded the owner $22,500. The Court did not approve of the percentage method used by the trial judge and thought the award to be excessive. The case was ultimately remanded to the lower court in order to grant defendants the opportunity to establish by competent evidence the difference between the market value immediately before and immediately after the expropriation. As to the proof required, the Court remarked:
‘ * * * ^ make ourselves perfectly clear, defendants must effectively show the market value of each tract immediately before and immediately after the expropriation in order to establish the quantum of their severance damages.’ ”
Again, in Texas Pipe Line Company v. Langlinais, La.App., 168 So.2d 377 (1964), the court noted from the testimony of expert witnesses that some degree of severance damages will result from the installation of the pipe line.
In Texas Gas Transmission Corporation v. Young, 198 So.2d 453 (1967), the court *252 made this comment which is apropos to the issue of proof, on page 457:
“[4] The severance damages to the remaining property cannot he presumed, and such damages will not be awarded unless the owner shows by competent evidence that the value of his remaining land has been diminished by the taking. State, Through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1962); State, Through Department of Highways v. Dodge, 168 So.2d 430 (La.App.3d Cir. 1964).”
We have made what we consider an exhaustive research of the jurisprudence to satisfy ourselves that in no case has an award of severance damages been made in the absence of proof that such damages existed. In each case we have found that first there was evidentiary proof of the existence of damages, and in every case wherein an award was made, there was an evidentiary basis for the quantum awarded.
In the instant case there is no proof of any damage by severance, nor is there any proof of quantum.
The defendant has urged us to remand the case for proof of severance damages, however, we find a remand is not warranted or justified under the facts. There was no proof offered to first establish any severance damages per se, the first factor of proof, nor was there any attempt on the part of the defendant to offer expert testimony of quantum.
For the foregoing reasons, the judgment appealed from is amended by reducing the award of the district court to $5,272.40, and in all other respects the judgment is affirmed.
Defendant is cast for costs of this appeal and the costs in the trial court incurred subsequent to the offer of $7,500.00 by plaintiff at the beginning of the trial.
Amended, and as amended affirmed.