307 So.2d 380 (1975)
SOUTHWESTERN ELECTRIC POWER COMPANY, Plaintiff-Appellee,
v.
Lewis P. CONGER et ux., Defendants-Appellants.
No. 12491.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1975.
Henry Newton Brown, Jr., Bossier City, for defendants-appellants.
Wilkinson, Carmody & Peatross by Arthur R. Carmody, Jr., Shreveport, Walter O. Bigby, Bossier City, for plaintiff-appellee.
Before AYRES, BOLIN, and DENNIS, JJ.
AYRES, Judge.
This is an expropriation proceeding whereby plaintiff, Southwestern Electric Power Company, a public corporation engaged *381 in the business of generating and distributing electricity and electrical energy to the general public, sought a right of way across defendants' property for the construction, maintenance, and operation of a natural gas pipeline from its gas wells in the Elm Grove Field in Bossier Parish to its Arsenal Hill electric generating plant in the City of Shreveport, a distance of approximately 31 miles.
Consolidated with the instant case, as a matter of convenience for argument and submission in this court, are Southwestern Electric Power Company v. Gladys S. McCaskill, La.App., 307 So.2d 385; Southwestern Electric Power Company v. Nora T. Mahaffey, La.App., 307 So.2d 387; and Southwestern Electric Power Company v. David Allian Dement et ux, La.App., 307 So.2d 390. The basic issues in these consolidated cases, except the compensation to which defendants are entitled, are so identical or similar in character that they may be treated in the opinion in the instant case.
It may be noted, however, that this particular case was heretofore before us on plaintiff's appeal from a judgment sustaining exceptions of no cause and of no right of action (280 So.2d 254). On that appeal it was urged (1) that there was no authority in law for the condemnation of property by plaintiff for use as a natural gas pipeline, and (2) the allegations of plaintiff's petition did not disclose a public necessity for the servitude sought. Both of these contentions were overruled. There we found that ample legal authority existed for the taking under appropriate facts and circumstances, and that, moreover, plaintiff's allegations were sufficient in disclosing a public need for the property sought to be expropriated. The judgment appealed was accordingly reversed, the exceptions overruled, and the cause remanded to the trial court for further proceedings.
On the remand, this cause was tried upon its merits. Thereafter, there was judgment in plaintiff's favor granting unto it the right of way sought across defendants' property. Compensation for the property taken was awarded defendants in the sum of $4,539.09. From the judgment thus rendered and signed, defendants perfected a devolutive appeal.
Defendants reurge their defenses which relate, as aforesaid, to the basic legal right of plaintiff to maintain this expropriation proceeding, the necessity for the right of way sought, or, in the alternative, the location of the right of way, and lastly the compensation to which defendants are entitled.
The legal authority justifying plaintiff's action in this proceeding was upheld in our original opinion heretofore referred to. For the reasons therein assigned, we found this defense without merit. Nothing new has been advanced which would warrant any modification of our original conclusion. Hence, further discussion of this point may be pretermitted.
The remaining issue to which we have referred is factual in character and, as already noted, relates to the question of the public necessity concerned in the taking. We have thoroughly reviewed this issue and find, as did the trial court, that the evidence supports plaintiff's allegations and establishes the need for the right of way sought. Plaintiff's proof of its allegations on the trial of the merits of this cause was substantial and convincing. Southwestern Electric Power Company is the principal supplier of electricity in Bossier and Caddo Parishes, including the municipalities of Shreveport and Bossier City. It serves practically all of the industries, commercial establishments, homes, schools, hospitals, and military installations in this area of 712,000 persons.
Over 90% of its electricity is generated by its five power plants, three of which are located in East Texas and two in Louisiana. The remainder of the electric energy distributed by it is purchased from other interconnected companies, all of which produce electricity through natural-gas-operated boilers. Its Arsenal Hill Plant in *382 Shreveport can use only natural gas as boiler fuel. Others of its plants can operate on fuel oil for brief periods of time, that is, for four or five days.
Plaintiff's Louisiana plants are supplied with natural gas by the Arkansas Louisiana Gas Company except for a small percentage of its requirements which are acquired from a small gathering system in the Mooringsport Field. Arkansas Louisiana Gas Company admittedly cannot supply all of plaintiff's requirements and has, moreover, curtailed and given notice that it will continue to curtail in the future the supplying of natural gas to plaintiff's plants. There are no other sources of supply available to these plants in Louisiana.
Plaintiff, in view of the aforesaid impending shortage of natural gas, undertook to augment its supply for its Louisiana plants by drilling in the Elm Grove Field. This operation resulted in the successful completion of seven wells with production estimated to supply one-third of plaintiff's Louisiana power-plant requirements. In order to utilize this gas, it is necessary to construct a pipeline to connect the wells with the generating plants. The record further discloses that this line, located as the most feasible by the engineering firm of Ford, Bacon & Davis, will cross defendants' property, and that a right of way cannot be acquired through negotiation.
The impossibility or the impracticality of converting Southwestern Electric's plants to the use of oil, coal, or other sources of energy was convincingly established. Prospective construction of two additional plants with coal as fuel cannot be completed prior to 1977. Even then, by growth and expansion, and even through normal use in the area, its present plants must continue to use natural gas as a generating fuel.
It may be further mentioned that although plaintiff has a source of supply of natural gas in the Ada Field of Webster Parish to the maximum extent of 23,000 MCF per day delivered by Arkansas Louisiana Gas Company, its contract for transportation thereof expires on January 1, 1978.
Thus, as we review the record, plaintiff's proof of its natural-gas shortage and need for the fuel sought to be transported in the proposed natural-gas pipeline is substantial and, for all practical purposes, uncontradicted. No proof was offered by defendants of plaintiff's abuse of its discretion in selecting the route for the pipeline. The selection of this route was the primary responsibility of E. E. Moncla, senior project manager for Ford, Bacon & Davis, one of the large engineering organizations of the United States. His experience in operations of this character is extensive. Moncla testified that the route of the line was located in accordance with established, accepted engineering practices which he described as the best route. This line is generally located in fairly isolated areas where the least inconvenience will result to property owners.
The construction contemplated is a 12inch pipeline designed to withstand 1,600 pounds of internal pressure but which, it is contemplated, will operate at only 600-700 pounds of pressure. It is shown that construction will exceed the codal safety requirements of the Department of Transportation.
As pointed out by this court through Judge Heard as the author of the opinion in Southwestern Electric Power Company v. Conger, 254 So.2d 98, 100 (La.App., 2d Cir., 1971):
"It is not enough for Conger to simply point out alternate routes to the court, he must show that SWEPCO abused its discretion, not simply used it."
In further reviewing the jurisprudence on route selection, Judge Heard emphasized that:
"It is the well settled jurisprudence in Louisiana that:
"`* * * in the location of rights-of-way considerable discretion is vested *383 in the expropriating authority and the courts will not disturb or interfere with the exercise thereof in the absence of fraud, bad faith or conduct or practices amounting to an abuse of the privilege. * * *' [Central Louisiana Electric Company v. Covington & St. Tammany Land & Improvement Company, La.App., 131 So.2d 369, 375, 1st Cir. 1961].
"Texas Eastern Transmission Corporation v. Bowie Lumber Co., La.App., 176 So.2d 735 (1st Cir. 1965), writ refused, 248 La. 385, 178 So.2d 663 (1965); Gulf States Utilities Company v. Heck, La. App., 191 So.2d 761 (1st Cir. 1966), writ refused, 249 La. 1021, 192 So.2d 370 (1966); Texas Gas Transmission Corporation v. Pierce, La.App., 192 So.2d 561 (3d Cir. 1966); Central Louisiana Electric Company v. Brooks, La.App., 201 So.2d 679 (3d Cir. 1967), writ refused, 251 La. 229, 203 So.2d 558 (1967). Quoting further from Central Louisiana Electric, supra, the court said:
"`* * * that availability of other and alternate routes is of no concern to the property owner whose land is sought to be expropriated provided the location selected fulfills the needs and requirements of the expropriator, meets the standards prescribed by sound engineering and economic practices, is neither arbitrarily nor capriciously chosen, and does not constitute an abuse of the discretionary right of selection. * * *' [131 So.2d 369, 375, 376]
"Louisiana Power and Light Company v. Anderson, La.App., 188 So.2d 733 (2d Cir. 1960); Gulf States Utilities Company v. Heck, supra."
254 So.2d 99.
See, also:
29A C.J.S. Eminent Domain § 91, p. 376.
The measure of damages is generally the market value of property, best determined by sales of similar property in the vicinity. In Louisiana Power & Light Company v. Simmons, 229 La. 165, 85 So. 2d 251, 253 (1956), Justice Hawthorne, as the organ of the Supreme Court, stated:
"Under the jurisprudence of this court the measure of compensation to be awarded in expropriation proceedings is generally the market value of the propertythat is, the price paid in a voluntary sale between a willing seller and purchaser. Furthermore, in determining this market value, sales of similar property in the vicinity are most important."
See, also: Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541 (1954); Louisville & N. R. Co. v. R. E. E. de Montluzin Co., 166 La. 211, 116 So. 854 (1928). These latter authorities point out that the criterion of value in the market value of property at the time of the institution of an expropriation suit, in view of any use to which it may be applied and of all the uses to which it is adapted, exclusive of any increase in value given by the construction itself, means the fair value of the property between one who wishes to purchase and one who wishes to sell under usual and ordinary circumstances.
Thus, lastly for consideration is the question of the award of the just and adequate consideration payable for the right of way or servitude which plaintiff seeks. Sought is a pipeline right of way 50 feet in width and 17,940 feet in length as it crosses defendants' property. The area comprises approximately 20.61 acres, about 16.20 acres of which is within an existing electric-transmission-line right of way presently owned by plaintiff. Therefore, only 4.41 acres of the right of way now sought will be outside the existing transmission-line servitude.
*384 On behalf of plaintiff, two appraisers testified; namely, Walter E. Hunter and Frank W. Grigsby. On behalf of the defendant, two experts likewise testified: O. L. Jordan and Kennon Harvill. Hunter and Grigsby testified that the best use of the land was for growing timber, grazing cattle, and otherwise for general agricultural purposes. Grigsby conceded, however, that the extreme western portion of defendants' property is bisected by a public road and located within short distances of small tracts comprising two-and-a-half to five acres which have been sold and developed as individual homesites. He was of the opinion that this property was susceptible of similar development and sale. Jordan classified the property as wooded land and open land. He valued the wooded land at $300.00 per acre and the open land at $900.00 per acre. Harvill used a similar designation, but found that all of the land in the existing right of way had a value of $575.00 per acre. Both Jordan and Harvill were of the opinion that the highest and best use of the property was for general agricultural purposes except that portion which fronted on the public road. Both of these witnesses expressed the opinion that the highest and best use of the property fronting the road was for homesites. This was based upon its proximity to other property which had been similarly developed.
The trial court agreed with the experts that a fair market value of the open portion of defendants' property was $300.00 per acre. The court found, however, that a described 6.34 acres within the right of way was lowland and fixed the value at $175.00 per acre. Considering evidence with respect to sales, the court fixed a value of $400.00 per acre on the Conger property, with better elevation, drainage, and location. With respect to the property subject to development for residential purposes, comprising 4.41 acres to be taken as a new right of way, the court placed an average value of $900.00 per acre on the property.
From the above, the trial court found and calculated an award of compensation as follows:
(1) The 15.19 acres of pipeline right of way within the existing electric-transmission-line servitude was valued at $575.00 per acre less 75% for the first taking, leaving a net value of $2,183.57, the residual percentage of which was held to have sustained damage of 50%thus concluding that the sum of $1,041.78 was adequate compensation for the servitude within the prior existing right of way;
(2) The 1.01 acres of new right of way at Red Chute was valued at $575.00 per acre, and the landowners were accordingly awarded 75% thereof, or $445.56, as damages;
(3) The 4.41 acres of additional right of way outside the electric-transmission-line servitude adjoining the public road was valued at $900.00 per acre for which the defendants were awarded 75%, or $3,051.75, as damages;
(4) Total compensation awarded was $4,539.09, as aforesaid.
The expert witnesses expressed divergent views as to what damages, if any, would be suffered by the remainder of defendants' property as a result of the installation and operation of the gas pipeline.
Defendants contend that under the circumstances they should, in a manner, ipso facto, be awarded severance damages and cite the cases of Collins Pipeline Company v. New Orleans East, Inc., 250 So.2d 29 (La.App., 4th Cir., 1971), and Michigan Wisconsin Pipe Line Company v. *385 Miller, 229 So.2d 182 (La.App., 3d Cir., 1969writ refused, 1970), as holding that the mere presence of a high-pressure pipeline has the effect of deterring prospective buyers and impairing the value of the land adjoining the right of way. In this connection, see "Eminent Domain in Louisiana" by Professors Melvin G. Dakin and Michael R. Klein, page 144 et seq. This authority apparently recognizes, as the latest and best rule, that severance damages in instances of this character represent the difference between the market value of the property immediately before and after the taking and follows the general principles governing recovery for severance damages. United Gas Pipe Line Company v. Nezat, 160 So.2d 367 (La.App., 3d Cir., 1964 cert. denied, 245 La. 970, 162 So.2d 15 [1964]). See, also: Texas Gas Transmission Corporation v. Broussard, 234 La. 751, 101 So.2d 657 (1958); Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1955); United Gas Pipe Line v. Schwegmann, 267 So.2d 247, 250 (La.App., 4th Cir., 1972), which are also authorities for the proposition that the burden is upon the defendants, the landowners, to establish the before-and-after-taking values in order to determine the quantum of severance damages.
In view of the afore-stated principles, the proof in the record is insufficient to support an award for severance damages. There is no evidence in the record from which we can conclude that there has been a diminution in the value of defendants' property or the amount thereof occasioned by the taking of or by the exercise of the rights acquired by the servitude. A preponderance of the testimony is that no severance damages were occasioned in any amount by the expropriation.
For the reasons assigned, the judgment appealed is affirmed at plaintiff-appellee's costs.
Affirmed.