AYRES, Judge.
This is an expropriation proceeding, a companion case to that of Southwestern Electric Power Company v. Lewis P. Conger et ux, La.App., 307 So.2d 380, with which it was consolidated, as a matter of convenience, for argument in this court. From a judgment in plaintiff’s favor authorizing the expropriation and fixing of an award of compensation for the rights and property taken, defendant appealed.
The basic issues, such as the authority of plaintiff to maintain this action and the necessity for the taking, were resolved adversely to this defendant’s position in the Conger case. Remaining'for consideration, however, are the questions of the proper method of calculating the amount of compensation and the adequacy of the compensation to which the defendant is entitled for the rights and property expropriated, as well as the question with respect to severance damages allegedly sustained to the remainder of defendant’s property.
The proposed natural-gas-pipeline right of way, 50 feet in width, will cross defendant’s property for a distance of approximately 250 feet and comprise .287 of an acre, all of which is located within an existing electric-transmission-line right of way.
The general area in which defendant’s property is located is outside the five-mile zoning area of metropolitan Bossier City. There are a lot of old structures in the vicinity of this property along U. S. Highway 80 such as grocery stores, filling stations, liquor stores, bars, garages, and some homes. Some of these structures have been abandoned. Walter L. Hunter, an expert real-estate appraiser testifying at the request of plaintiff, noted that little commercial activity had taken place on Highway 80 in recent years.
Hunter testified that the highest and best use of defendant’s property is for open pastureland. Frank W. Grigsby, another expert real-estate appraiser presented by plaintiff, stated that the highest and best use of the property is for residential purposes on the front near the highway and for agricultural purposes to the rear. Defendant’s expert appraiser, Kennon Harvill, testified that the highest and best use of the land is for residential purposes.
Plaintiff’s appraisers, in arriving at their estimation of the fair market value of defendant’s property, considered certain comparable sales ranging in values from $1,-100.00 to $2,000.00 per acre. In 1972 there was a sale of a 64-acre tract, fronting on Highway 80, located 200 to 300 feet west of defendant’s tract, at a price of $1,100.00 an acre. One comparable sale in 1970 was of a 10-acre tract fronting on Highway 80 for the sum of $1,500.00 an acre. Another tract with 660 feet of frontage on Highway 80 was sold in 1972 for $1,250.00 per acre. A sale in 1972 of a 37-acre tract fronting on the highway and Wafer Road was for the sum of $1,944.00 per acre, which apparently could be easily subdivided. A tract of land with 220 feet on Highway 80 was sold in 1969 for $2,000.00 an acre. Grigsby considered an additional comparable sale of a 49-acre tract with 667 feet fronting on the highway and Mahaffey Road which sold in 1970 for $1,121.00 per acre.
In view of the above “comparables,” Hunter valued defendant’s property at $1,-550.00 per acre in fee, and Grigsby arrived at the value in fee of $1,600.00 per acre. Both were of the opinion that the value in fee was diminished 75% by the existing electric-transmission-line servitude and that by the new taking the remaining value would suffer 50% damages. They determined, therefore, that the amounts due *387 defendant as just compensation for the total taking of the .287 of an acre to be $56.00 and $58.00 respectively.
Harvill did not have the opportunity to prepare a written report but determined the fair market value of defendant’s property to be $2,000.00 per acre in view of possible future residential development. He did not testify to any damage being sustained by the existing servitude.
The trial court, feeling that a residential subdivision on all of defendant’s property would be too speculative, therefore held in accord with Grigsby that the highest and best use of the property would • be for residential purposes along the highway and agricultural in the rear. After consideration of the expert testimony and comparable sales, the court determined the fair market value to be $1,800.00 per acre; and finding the testimony of plaintiff’s appraisers credible as to the diminution in value by 75% as a result of the existing servitude, leaving the remaining value of 25% of which the owners were allowed 50% as damages for the pipeline right of way, determined the just compensation to the defendant for the total taking to be $64.58.
We find no manifest error in the above conclusions, and moreover, after consideration of the entire record, are of the opinion they are correct.
 Defendant alleges that she should be awarded severance damages for the remainder of her property due to the very nature of a high-pressure gas pipeline. Severance damages represent the difference between the market value immediately before and after the taking occasioned by the expropriation. The burden is on the defendant to show the market value before and immediately after the expropriation in order to establish the quantum of the severance damages. Texas Gas Transmission Corporation v. Broussard, 234 La. 751, 101 So.2d 657 (1958); Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1955); United Gas Pipe Line v. Schwegmann, 267 So.2d 247, 250 (La.App., 4th Cir., 1972).
No evidence has been placed in the record from which we can conclude that there has been a diminution in the value of defendant’s property, or the amount or extent thereof by virtue of the taking, with respect to the use to which it is to be put. The preponderance of the testimony is that severance damages are not occasioned by the expropriation. This conclusion was also reached by the trial court.
For the reasons assigned, the judgment appealed is affirmed at plaintiff-appellee’s costs.
Affirmed.