AYRES, Judge.
This is an expropriation proceeding, a companion case to that of Southwestern Electric Power Company v. Lewis P. Conger et ux, La.App., 307 So.2d 380, with which it was, as a matter of convenience, consolidated for argument in this court. From a judgment in plaintiffs favor authorizing the expropriation and awarding defendant compensation for the rights and property taken, defendant appealed.
The basic issues, such as the authority of plaintiff to maintain this action and the necessity for the taking, were resolved adversely to this defendant in the Conger case. Remaining for consideration, however, are questions relating (1) to a diminution by 75% of the value of the property and rights taken by virtue of the existence óf a prior electric-power-transmission right of way; (2) to the failure to award a full 100% value of the property taken as compensation; and (3) to the nonallowance of severance damages.
The route chosen for the pipeline right of way crosses property owned by defendant north of U. S. Highway 80 some seven miles east of Bossier City comprising approximately 200 acres and south of U. S. Highway 80 in the same area containing approximately 100 acres. Defendant’s property does not lie within an incorporated or zoned area.
The north tract actually encompasses four separate tracts separated by small intervening tracts owned by third persons. The pipeline right of way will require 5.94 acres in this north tract, all of which will be located entirely within an existing electric-transmission-line right of way. In the south tract 2.8 acres of pipeline right of way will be necessary. No existing electric-power right of way is presently on this tract as it is on the north tract.
Plaintiff presented as evidence the testimony of two expert real-estate appraisers, Walter L. Hunter and Frank W. Grigsby, and defendant introduced the expert testimony of Kennon Harvill. Both of plaintiffs witnesses agreed that the highest and best use of defendant’s property is its pres *389 ent agricultural use, with the possibility that that portion of the south tract fronting on Haughton Road, Highway 614, could he sold in small acreage homesites. Harvill classified that part of defendant’s property south of U. S. Highway 80 fronting on Highway 614 as having the highest and best use for small homesites, while that part of the south tract away from the highways would be best used as at present for pastureland. Harvill was in accord with Hunter and Grigsby that the highest and best use of the defendant’s property located north of U. S. Highway 80 would be for pastureland and growing timber, as it is presently being used, but felt that part of the north tract around a golf course would have the highest and best use for residential purposes.
In determining the values to be placed on defendant’s property, Hunter and Grigsby used many of the same comparable sales which ranged in date from May of 1968 to December of 1972. They both testified that they chose “comparables” that were near in size and location to the subject property in order to better reflect the true value of the property. One “comparable” used by Hunter and Grigsby was a 65-acre tract sold in August of 1972 at a price of $1,-100.00 per acre. A second comparable sale was a 50-acre tract sold in 1970 for a sum of $1,121.00 an acre. Other comparable sales varied in area from 19.46 acres to 200 acres and in value from $250.00 to $1,-944.00 per acre.
Defendant’s appraiser, Harvill, used ten comparable sales in his determination of the value of defendant’s property, most of which were small-acre lots. Two sales used'by him, however, were of 20-acre lots, one on the Doyline Road which sold for $1,-000.00 per acre and another which was an intracorporate sale of property fronting on Highway 80, showing a price of $1,215.00 per acre in December of 1972 and of $2,-000.00 per acre on corporate dissolution in April of 1973.
Hunter arrived at a figure of $1,000.00 an acre for the value of defendant’s land, while Grigsby ascribed a value of $900.00 per acre to the land owned by defendant south of U. S. Highway 80 and $1,200.00 per acre for that property north of U. S. Highway 80. For the 2.8 acres of land needed for the right of way, both of plaintiff’s appraisers were of the opinion that defendant should be compensated for 75% of its fee value for the taking. For the taking of 5.94 acres for the pipeline right of way on the north tract within the existing electric-transmission-line right of way, they determined that the area had been depreciated already by 75% as a result of the existing servitude and that defendant was entitled to compensation for 50% of the remaining value. Using this formula, Hunter concluded the sum of $2,751.00 was just compensation, while Grigsby determined the just compensation for the total taking to be $2,670.00.
Harvill, defendant’s appraiser, valued the south tract at $2,000.00 per acre, attributing a 70% loss to defendant for the taking of this portion for the right of way. For the north, tract, he ascribed the value of $1,000.-00 per acre for that part best suited to agricultural use and $1,500.00 an acre to that portion which, in his opinion, had the highest and best use for residences. He determined that this tract had already been depreciated 50% because of the existing servitude and that the remainder would be depreciated by an additional 70% by the proposed right of way. Harvill felt that just compensation to defendant for the total taking would be $6,727.00.
Harvill was also of the opinion that defendant would suffer $4,350.00 in severance damages, while plaintiff’s appraisers felt that no severance, damages would be suffered.
The trial court, after hearing the evidence, determined that for the land in fee south of Highway 80, the value of $1,-000.00 per acre and an allowance of 75% for the right of way to be taken, or $2,000.-00, would adequately and justly compensate defendant for the loss of use of this 2.8 *390 acres. For the tract north of Highway 80, the court accepted the figure of $1,200.-00 per acre fee value and followed Harvill’s formula of 50% for the existing loss by the presence of the electric-transmission-line right of way, and allowed the defendant 75% additional of the remainder for new taking within the existing servitude, or $2,-339.10. The court thereby arrived at a figure of $4,339.10 for the total taking. The trial court awarded no severance damages, finding that none had been proved.
After review and consideration of the entire record, we are constrained to find that the aforesaid conclusions of the trial court are correct.
Defendant nevertheless contends that she should be allowed severance damages allegedly sustained to the remainder of her property. Severance damages in instances of this nature represent the difference between the market value immediately before and after the taking occasioned by the expropriation. Defendant, however, has the burden of showing the market value of the property before and immediately after the taking in order to establish the amount due her as severance damages. Texas Gas Transmission Corporation v. Broussard, 234 La. 751, 101 So.2d 657 (1958); Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1955); United Gas Pipe Line v. Schwegmann, 267 So.2d 247, 250 (La.App. 4th Cir., 1972).
No evidence has been placed in the record from which we can conclude there has been a diminution in the value of defendant’s property or the amount or extent thereof by virtue of the taking. The preponderance of the testimony is to the effect that no severance damages were occasioned by the expropriation. This was, as already noted, the conclusion of the trial court.
For the above reasons, the judgment appealed is affirmed at plaintiff-appellee’s costs.
Affirmed.